WILLIAM ARMSTRONG V. J. H. TRAYLOR AND EMMA ELMORE.

No. 275.

**1. Due Course of Law.**

By the law of the land is meant the general law, which hears before it condemns, proceeds upon inquiry, and renders judgment only after trial..... 601

**2. Constitutional Law—Hog Law Unconstitutional.**

Articles 4605, 4606, and 4607, Revised Statutes (being part of chapter 4, title 93), are in conflict with section 19 of article 1 of the State Constitution, in that the property of the citizen may be taken and disposed of without due course of the law of the land. The remedy is for a private wrong. There is no trial, no right of appeal, and the rights of the owner have no protection. 602

**3. Local Election Adopting the Hog Law.**

The Legislature has the power to submit the adoption of the law preventing certain animals from running at large in counties and subdivisions within a division of territory designated by person signing an application for an election upon the question of such adoption of the law to the territory...... 603

**4. Stock Laws—Constitution Construed.**

Under section 23, article 16, of the Constitution, the Legislature is empowered to pass a law regulating live stock—making it applicable to the entire State, or to a given county or subdivision of a county. Such law could be made effective by direct enactment or upon direct vote of the freeholders of the locality. 603

QUESTIONS CERTIFIED from Court of Civil Appeals for First District, in an appeal from San Jacinto County.

*S. A. McCall*, for appellant.—That plaintiff's hog was seized without any process or writ whatever there can be no doubt, taking the allegations in defendants' answer as true.

According to said answer, defendant Elmore, having informed herself that plaintiff's hog was committing a trespass upon her premises, constitutes herself an officer, being the interested party, without notice to the owner, seizes plaintiff's hog, in which she has no "interest, by way either of title, mortgage, pledge, or lien," all to the end that she may receive compensation for detaining it, without the owner's consent, and the damages, if any, she may have sustained. It is equally clear that no proof was adduced before said arbitration. Not only does she (Elmore) seize plaintiff's hog without process, being also the informer, and condemns without proof, but she (Elmore) proceeds to carry out her own judgment without execution, and does in fact administer upon plaintiff's property.

Plaintiff is not barred in his rights by such a proceeding, because it is not a "due process of law" to constitute one informer, witness, judge, and jury, as well as the officer who executes his own decrees. Rhine v. McKinney, 53 Texas, 354; Keller v. Corpus Christi, 50 Texas, 614; Lynn v. The State, 25 S. W. Rep., 779; Const., art. 1, sec. 19; 10 Am. and Eng. Encyc. of Law, 187; Cool. Const. Lim., 510, 530, 531, 573; 6 Am. and Eng. Encyc. of Law, 43, and notes; Const., art. 5, sec. 11; Rev. Stats., arts. 12, 17, 1005, 1040, 1090, 1138, 1560, 2319, 2320; Batsel v. Blaine, 15 S. W. Rep., 283.

*C. W. Robinson* and *McKinney & Hill*, for appellees.—1. Inasmuch as it is not controverted that the hog sued for was seized in a district in which the stock law had been adopted under the provisions of title 93, chapter 4, of the Revised Civil Statutes of Texas (article 4592, et seq.), or that said statutory provision had been in all respects complied with by the appellee Elmore in the seizure and sale of the hog sued for, the only question raised by this appeal is, is said title 93, chapter 4, and especially articles 4604, 4605, 4606, and 4607, constitutional?

Title 93, chapter 4, of the Revised Civil Statutes of Texas, and the several articles therein contained, are valid and constitutional, and the hog sued for having been seized and sold in conformity with the provisions of said chapter, the legal title to said animal vested in the appellee Elmore and her vendee Traylor, and constituted a good defense to appellant's suit in the court below.

It is admitted by appellant that the stock law was legally adopted in the district in which the hog sued for was seized, and that the provisions of said law had been complied with in the seizure and sale of said animal. Const., art. 16, secs. 22, 23; Rev. Stats., title 93, chap. 4; Coyle v. McNab, 18 S. W. Rep., 198; Gilly v. Haddox, 15 S. W. Rep., 714; Waco v. Powell, 32 Texas, 258; Purdith v. Allen, 13 S. E.

Rep., 1012; Davidson v. New Orleans, 96 U. S., 97; Murray v. Improvement Co., 13 How., 272; McMillan v. Anderson, 95 U. S., 37; Fort Smith v. Dodson, 46 Ark., 296; Rose v. Hardin, 4 S. E. Rep., 41; Cook v. Gregg, 46 N. Y., 439; Hard v. Nearing, 44 Barb., 472; Campau v. Langley, 39 Mich., 451; Wilcox v. Hemming, 15 N. W. Rep., 435; Folmer v. Curtis, 5 South. Rep., 678; 1 Dill. Mun. Corp., 484; Cool. Const. Lim., 588.

2. The clause in the Constitution of the United States prohibiting the taking of private property without compensation is not intended as a limitation of those police powers which are necessary for the existence of all governments. 10 Am. and Eng. Encyc. of Law, 189, et seq.

3. The stock law being in force in the district in which the animal was seized, was binding on all persons, whether they reside in the district or not. Folman v. Curtis, 86 Ala., 354.

BROWN, ASSOCIATE JUSTICE.—The following statement and questions are submitted to this court by the Court of Civil Appeals for the First District:

"The suit was brought by appellant, William Armstrong, in a Justice Court of San Jacinto County, against the appellees, J. H. Traylor and Emma Elmore, to recover of them a certain hog, or its value, $25, alleged to be wrongfully withheld from his possession by the defendants. Defendants answered, admitting the possession of plaintiff's hog, but that they were rightfully in possession thereof, because it had been impounded and sold by virtue of the law to prevent certain animals from running at large, as provided in chapter 4, title 93, of the Revised Statutes then in force, in the subdivision of San Jacinto County in which defendant Elmore lived. They set up at length the proceedings required by the statute for the adoption of the law, the impounding of the hog by defendant Elmore, the assessment of damages by three disinterested freeholders, and the sale of the hog and its purchase by defendant Traylor; and showed that the law had been in all respects complied with. Plaintiff demurred to the answer. The District Court overruled the demurrer and rendered judgment in favor of the defendants on proof of the facts alleged.

"1. Is the statute in conflict with the Bill of Rights in that it authorizes the seizure, condemnation, and sale of plaintiff's property without due process of law?

"2. Is the remedy provided by the statute for the assessment and collection of the damages done by the animal, due process of law?

"3. Had the Legislature the power to submit the adoption of the law to a division of territory designated by persons signing the application for the election, and not by the Legislature itself, as to the county or fixed subdivision thereof?

"4. Does section 23, article 16, of the Constitution apply to laws to prevent domestic animals from running at large so as to authorize the submission to the vote of the freeholders only? Or does not such legislation come within the scope of section 22 of article 16 of the Constitution authorizing the passage of fence laws applicable to any subdivision of the State? If it comes within the latter section, has the Legislature the power to limit the right to vote upon the question of adoption of the law by freeholders only?

"5. Did the District Court err in overruling plaintiff's demurrer to the answer?"

Article 1, section 19 of the Constitution of this State is in this language: "No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land."

The articles of the Revised Statutes which are claimed to be in conflict with the above provision of the Constitution are in substance as follows:

Article 4604 permits the owner, lessee, or person in possession of any inclosed premises or lands to take up any stock forbidden by the law to run at large when it has been adopted for that county or subdivision of the county, if such stock shall enter upon the inclosed lands, or roam about the residence, lots, or cultivated lands of such person without his consent, and to impound and hold such stock until his fees and damages are paid by the owner thereof.

Article 4605 requires, that upon the taking up of such stock notice shall at once be given to the owner, and he shall have the right to regain possession upon payment of fees and damages.

By article 646, the fees to which the person taking the stock into custody shall be entitled from the owner of the stock are prescribed; and it is also provided therein, that the damages done by the stock to the person taking the same up may be assessed by any three disinterested freeholders of the county, whose judgment shall be final.

By article 4607, the person impounding the stock is authorized to sell the same at public auction for cash, upon giving notice as required for constable's sales of personal property, and may apply the proceeds to the payment of the damages assessed and the fees to which he is entitled by law, paying the remainder, if any, to the owner.

Do these provisions of the law meet the constitutional requirement, that the proceeding by which the owner is divested of his property must be by "due course of the law of the land?"

Mr. Cooley, in his work on Constitutional Limitations, page 432, says: "By the law of the land, is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his liberty, life, property, and immunities un-

der the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land." The Legislature has the power to enact laws to protect the public from the inconveniences of having stock running at large upon the highways, and under our Constitution may provide such laws with a view to protecting the private interests of the citizen from the same evils, but such power must be exercised in subordination to and in accordance with the Constitution.

Whether or not a law secures the protection afforded by the Constitution, depends upon the subject upon which it operates and the character of the rights that it affects. The law in question does not have in view the protection of the public against the inconvenience of having the free use of the highway impeded by the running of the stock therein, but protects the private citizen in the enjoyment of his private property, and provides for compensating him for injury to such private property. The questions involved are, has there been an infraction of the rights of the citizen, not the public, and what injury has he sustained? These are strictly private rights arising between individuals, in which the public has no more concern than in any other private wrong. No public officer has authority to impound the stock for the public protection; no public pound is required; the fees do not go to a public officer in support of the enforcement of the law. The private citizen whose rights have been invaded can alone act in the premises; the fees are given to him to remunerate him for acting in his own interest, and he takes the property into his own custody, without bond or any security to the owner. No penalty is given for a wrong to the public, but compensation for the private, injury done to the property of the man who is authorized to seize the stock, and for expenses incurred by him in so doing without the consent of its owner.

Under the provisions of these articles, the interested party is authorized to determine the question of a trespass having been committed by the stock; it is not provided that this question shall be inquired into by any other person or officer; its seizure is its condemnation, leaving nothing to be ascertained except the amount of damages. The same person must select the freeholders to assess the damages which he is to receive; the law makes him the sole actor in the matter. When thus selected, the freeholders are not required to hear evidence as to the trespass or the amount of the damages; in fact, they have no power to decide whether or not the trespass has been committed, but are confined to the amount of compensation. The owner has no voice in the selection of the freeholders, nor has he the right to appear before them in person or by attorney; he has no right of appeal, in fact no right except to pay the costs incurred and the damages assessed, or give up his stock. There is no hearing, no inquiry, and no trial before judgment; no officer to sell the property, nor process under which

sale is to be made; nothing that bears the faintest resemblance to a judicial proceeding. Such a law affords no security to the owner of the stock; it is not due process of law, and the property is not sold "by the due course of the law of the land." These articles are therefore void (which of course does not affect other articles), and the court erred in overruling the demurrer to the answer, because it showed no title to the hog, nor justification for its detention. Cool. Const. Lim., p. 447; Rockwell v. Nearing, 35 N. Y., 302; Rhine v. McKinney, 53 Texas, 354. Under our Constitution the Legislature might accomplish all the purposes sought, giving to the person authorized to impound the stock his fees and compensation for injuries committed, to be ascertained under provisions of the law, which would afford the proper protection to the owner of the stock, by providing for a trial fair and impartial, though it might be a summary proceeding. Campbell v. Evans, 45 N. Y., 356; Grover v. Huckins, 26 Mich., 476; Campau v. Langley, 39 Mich., 451.

To the third question, we answer, that the Legislature, being authorized by the Constitution to submit the law to the voters of any subdivision of a county, had the power to adopt the method of ascertaining the subdivision to be affected that seemed most advisable, and could authorize the voters to designate the boundaries of the subdivision in which they desired that the law should be applied. The policy of such a course was a matter for the consideration of the Legislature, and not of the courts.

To the fourth question, we reply, that section 23 of article 16 of the Constitution authorized the Legislature to pass a law regulating live stock, making it applicable to the entire State, or it might have exempted any county or counties from the operation of such law. The Legislature might also have enacted a law regulating live stock in any given county or in any subdivision of such county, or it might, as it did in this instance, pass a law not to be in force in any county or part of a county until adopted. In case of passing a local law either directly applicable to a particular locality, or a general law to be applied by a vote to a locality, such law could not be made operative until it was adopted by a vote of the *freeholders* of the locality or section to be affected. The power to pass a general law upon this subject is given by the first part of the section; but the authority to pass a local law is conferred by the *proviso* of the section which prescribes the condition, that it shall not go into effect except upon the vote of the freeholders of that section of the county.

Delivered March 21, 1895.