### BILL ROBERSON v. THE STATE.

#### No. 2111. Decided May 1, 1901.

**1. Local Option Stock Law.**

Under provisions of article 16, section 23, of the Constitution, providing that the Legislature may pass a law authorizing freeholders of a county to vote upon the adoption of a law for the regulation of live stock, it makes no difference whether the county is strictly an agricultural or stock-raising county.

**2. Same—Act of Twenty-sixth Legislature, Chapter 128, Constitutional.**

The Act of the Twenty-sixth Legislature, chapter 128, authorizing a local election with regard to the regulation of live stock, is constitutional. Following Armstrong v. Traylor, 87 Texas, 598.

**3. Same—Prosecution and Penalty Under the Act.**

Although the Act of 1899, providing for the adoption of laws regulating live stock by local election, contains no penalty for a violation of such law when adopted, still the prosecution and punishment may be had and enforced under the Act of the Twenty-sixth Legislature (1897), page 220, which provides that any person who willfully permits his stock to run at large in any county or subdivision of a county in which the stock law has been adopted shall be deemed guilty of a misdemeanor, and be punished, etc.

**4. Same.**

The fact that a civil remedy is provided for a violation of the local option stock law does not preclude or bar a criminal prosecution for a violation of the same law.

**5. Same—Election for—Voters in Incorporated Cities.**

At an election for the adoption of a local option stock law, resident citizens of incorporated cities within the county or subdivision, which have their own separate stock laws, are not disqualified from voting, provided they are freeholders.

**4. Same—Order for Election.**

There is no provision of law requiring that the order of the commissioners court, ordering the election for a local option stock law, should, in terms, limit the right to vote at such election to freeholders of the county, and an omission to so limit the right to vote does not invalidate the order or the election. Davidson, P. J., dissenting.

APPEAL from the County Court of Ellis. Tried below before Hon. J. E. LANCASTER, County Judge.

Appeal from a conviction for allowing cattle to run at large in violation of the local option stock law; penalty, a fine of $5.

The opinion states the case.

*Rob't B. Seay* and *J. N. Wilkerson,* for appellant.

*Groce & Skinner* and *D. E. Simmons,* Acting Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was charged by information that he did "unlawfully and willfully fail and refuse to keep up one certain cattle, and did unlawfully and willfully permit to run at large one cattle of his own, and one cattle of which he was the agent, and one cattle of which he then and there had the control, after the qualified voters of said. Ellis County had determined at an election held in accordance with the laws of said State that cattle should not be permitted to run at large in said Ellis County," etc. Upon the trial appellant admitted he was guilty as charged in the information, and his punishment was assessed by the court at a fine of $5.

From an inspection of the record, it appears that this prosecution is based upon a law adopted in Ellis County by the qualified freehold voters, under the terms and conditions of chapter 128, Acts of Twenty-sixth Legislature. Appellant insists that said act is unconstitutional. In the statement of facts appears the agreement that Ellis County is an agricultural county, and not a stock-raising county, as is ordinarily understood. Appellant insists, for this reason, it is not provided in the Constitution that the law with the local option feature therein may be passed by the Legislature. Section 23, article 16, of the Constitution provides: "The Legislature may pass laws for the regulation of live stock and the protection of live stock raisers in the stock-raising portion of the State, and exempt from the operation of such laws other portions, sections or counties; and shall have power to pass general and special laws for the inspection of cattle, stock and hides; and for the regulation of brands; provided, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby and approved by them before it shall go into effect." An inspection of this section of the Constitution discloses the fact that the first two clauses are entirely

separate and distinct from the third clause, which reads as follows: "And shall have power to pass general and special laws for the inspection of cattle, stock and hides, and for the regulation of brands." The third clause authorizes a general law. The first two clauses authorize a special or local option law, since the same, in order to be operative, shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect. We think it follows from an inspection of this section that it makes no difference whether Ellis County is strictly an agricultural or stock-raising county, as the Constitution provides the Legislature may pass a law authorizing the freeholders of a county to vote upon a law for the regulation of live stock. We find, from an inspection of the journal of the Constitutional Convention of 1875, the following history of the section in question: "Mr. Waelder offered the following section, to wit: 'The Legislature may pass laws for the regulation of live stock and the protection of stock raisers in the stock-raising portions of the State, but exempt from the operations of such laws other portions, sections or counties; provided, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby and approved by them before it shall go into effect.' Adopted." On page 714 of the journal it further appears that on motion of Mr. Ballinger an independent section (No. 35) was adopted, to the effect, to wit: "The Legislature shall have power to pass general and special laws for the inspection of cattle, stock and hides, and for the regulation of brands." Subsequent to the incorporation of section 35 by Mr. Ballinger, we find, on page 777 of the journal, Mr. Murphy offered the following amendment: "Strike out section 35, and insert in section 23, in line 121, between the word 'counties' and the word 'provided,' the following: 'And shall have power to pass general and special laws for the inspection of cattle, stock and hides, and for the regulation of brands.'" The incorporation of what formerly was section 35 into section 23 makes what we now have—section 23. This conclusively shows that, as originally considered, there were two sections. Then, leaving out section 35, as above quoted, there can be but one conclusion, to wit, that the Legislature has constitutional power to pass a law for the regulation of live stock and for the protection of stock raisers in the stock-raising portions of the State, one or either, provided that in so doing said law shall be submitted to the freeholders of the section affected thereby and approved by them before it shall go into effect. Without going into a more elaborate discussion of this matter, we deem it only necessary to say that the law under which the local option stock law was adopted in Ellis County, and under which this prosecution is based, is constitutional. The validity and constitutionality of this statute were directly passed upon by the Supreme Court of this State in Armstrong v. Traylor, 87 Texas, 598, and we held a sim-

ilar stock law to the one now under consideration constitutional in Lastro v. State, 3 Texas Criminal Appeals, 370. See, also, Beyman v. Black, 47 Texas, 558.

Appellant further contends that he can not be prosecuted under this penal statute; that the local option stock law, for the violation of which the information herein was filed, was adopted in 1899 (see Acts Twenty-sixth Legislature, page 220), and the penal statute under which this prosecution is based was adopted in 1897 (see Acts Twenty-fifth Legislature, page 112), and is as follows: "That any person who shall willfully turn out or cause to be turned out, on land not his own or under his control, or who shall willfully fail or refuse to keep up any stock, prohibited by law from running at large in any county or subdivision of any county in this State, in which the stock law has been adopted; or who shall willfully allow such stock to trespass upon the land of another, in such county, or subdivision thereof; or who shall willfully permit to run at large any stock of his own, or of which he is the agent, or of which he has the control, and not permitted to run at large in any county or subdivision of any county in this State, in which the stock law has been adopted, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by fine in any sum not less than five dollars and not more than fifty dollars." Appellant insists that he can not be prosecuted under the provisions of this act, because article 3 of the Penal Code provides that no person shall be punished for any act or omission, unless the same is made a penal offense, and a penalty affixed thereto by the written law of this State. That the Act of 1899 does not provide any penalty, except in the section which provides for the impounding of stock and assessing damages, etc.; that the penalty passed for the former stock law, pertaining to different kinds of animals, should not be made to reach into the future and made to apply to horses, cattle, etc. Chapter 5, of the Revised Civil Statutes, page 995, contains the only stock law in force at the time of the adoption of the above quoted penal statute; and that authorizes any county, or subdivision thereof, to determine by vote, whether hogs, sheep and goats shall be prohibited from running at large in such county or subdivision. The Act of 1899 (under which this prosecution is based) authorizes the freeholders of a county or subdivision to determine whether horses, mules, jacks, jennets, or cattle shall be permitted to run at large in certain designated counties or subdivisions. We do not think that the penal statute of 1897 would any the less attach to the law of 1899 than to the law of 1895, as contained in the Revised Civil Statutes, since an inspection of the language of the Penal Code shows the same is broad enough, and in every reasonable and legal intendment covers every character and kind of stock that may not be permitted to run at large in any county or subdivision of a county in which the stock law has been adopted. This statute, as we understand it, is analogous to article 112 of the Penal Code, which provides: "Any person who shall pursue or follow any occupation, calling or profession, or do any acts taxed by law, without first obtaining a license

therefor, shall be fined in any sum not less than the amount of the taxes due and not more than double that sum." We have held that, although a vocation may be taxed by the Legislature subsequent to the enactment of this penal statute, still, if the party fails to pay the tax imposed upon the vocation, he can nevertheless be prosecuted under the pre-existing penal statute. See Fahey v. State, 27 Texas Crim. App., 146.

Appellant insists, however, that, because what is ordinarily denominated the "hog law," as contained in the Revised Civil Statutes, and the stock law as contained in the Act of 1899, contains civil remedy wherein it provides for fees for impounding stock, thus precluding any legislative intent that the penal prosecution could also be maintained. We do not think this contention is correct. A civil action for private redress and a prosecution for the public are of different natures, and they may be always concurrent and neither will be a bar to the other. Bishop on the Written Laws, sec. 170, p. 160. It follows, therefore, that the prosecution in this case was properly laid upon the penal statute as contained in the Acts of 1897. Appellant also insists that the petition presented to the commissioners court, as required by law, was not filed prior to the meeting of the commissioners court at its regular session. The statute requires the petition of 100 freeholders to be filed with the commissioners court prior to the next regular term thereof, and that such court shall pass an order directing an election to be held throughout the county, or the particular subdivision thereof, as the case may be, etc. There is a great deal of evidence on the question as to whether or not the petition was filed prior to the time the court met. We think the evidence in this case shows the petition containing the requisite number of freeholders, as required by statute, was filed prior to the meeting of the commissioners court. Appellant also insists, that a new trial should be granted because the evidence shows that persons not interested in the law, to wit, in the cities which have been incorporated and have separate stock laws, were allowed to vote at this election. There is nothing in the law authorizing the election which disqualifies this class of citizens from voting, provided they are freeholders. Appellant also contends that the order of the commissioners court, not limiting the right of freeholders alone to vote in the county of Ellis, is invalid. There is no provison of law requiring this to be done; nor does appellant show that anyone other than freeholders voted. We believe that we have passed upon all of appellant's assignments, and, finding no error in the record, the judgment is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, dissents.

HENDERSON, JUDGE.—I concur in the conclusion reached, and will write my views.

[NOTE.—Judge Henderson's opinion has not come to the hands of the Reporter.]