### JIM WILLIAMSON v. THE STATE.

#### No. 1152.   Decided April 26, 1911.

**Local Option—Insufficiency of the Evidence—Misconduct of Jury.**

Where, upon trial of a violation of the local option law, the testimony as to the identity of the defendant was not shown very clearly, and the jury discussed facts not in evidence in arriving at the verdict, there was reversible error.

Appeal from the County Court of Johnson.   Tried below before the Hon. J. B. Haynes.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

*Phillips & Bledsoe,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case the appellant was indicted for violating the local option law, and upon a trial he was convicted.

The State's witness, Louis Van Der Lee, testified as to the identity of the person who sold him the whisky as follows, on direct examination: "The man from whom I got the whisky looked like the defendant. I know the defendant now, but did not know him at the time." On cross-examination he said: "I could not say positively that he is the man from whom I got the whisky, but he looks like the man. I do not say for certain he is the man; he just looks like him. When I was carried before the officers, I told them I did not know the man from whom I got the whisky. They put me in jail for two days, when I again told them I did not know the man. They kept me in jail for eight days, when I told them this looked like the man. I was willing to tell them anything to get out of jail. I do not know whether this is the man or not, but he looks like the man."

On identity of the man this is all the testimony of the State. The defendant testified he was not at the Red Cross Drugstore on the morning the witness testified he purchased the whisky. His wife also testifies he was not there, as did O. H. Simpson and W. J. Miller. The latter two stayed at the drugstore.

Defendant filed a motion for a new trial, and in the motion complained of the misconduct of the jury. In bill of exceptions No. 5 is presented the testimony of the jury on this motion. One of the jurymen, J. W. Barnes, testified: "Some time during the time we had the case under consideration I was told that defendant had been keeping his sister-in-law. I would not say this was told me in the jury room, nor could I say where it was, but I do know that it was after the jury retired and before they returned a verdict. Someone of the jurors stated in the jury room that defendant had 'just bought an interest in the Red Cross Drugstore for the purpose of selling liquor.' It was discussed in the jury room, and some of the jurors said that there was not a day that whisky was not sold at the Red Cross Pharmacy, and it was mentioned and discussed that the law was being openly violated there. . . . The jury agreed that if defendant was guilty at all he ought to be given the highest penalty, and after we agreed to a verdict, we all agreed that we would give him the maximum penalty."

None of the things this juryman says was discussed by the jury had any basis in the testimony adduced on the trial of this case. Inasmuch as the testimony as to the identity of this defendant, as the person who made the sale, is not shown very clearly by the State's witness, and all the witnesses for the defendant render it impossible for him to have made the sale, and this discussion of outside facts is indulged in by the jury, we do not think this verdict ought to be permitted to stand. Defendant was not on trial for keeping his sister-in-law. There was no evidence in the record that he was so doing. The reputation of the Red Cross Pharmacy at that time should not have been considered, as he was not shown to have had any connection with it at that time.

We do not deem it necessary to consider the other assignments, but for the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*