BRAZEALE et al. v. STRENGTH, County Judge, et al. (No. 1855.)

(Court of Civil Appeals of Texas. Texarkana. May 31, 1917.)

1. COUNTIES &#8660;150(1) — EXPENDITURE OF MONEY—PROTECTION OF LIVE STOCK—CONSTRUCTION OF STATUTE.

Acts 33d Leg. c. 169, authorizing the county commissioners' court to co-operate with the live stock sanitary commission in protecting live stock, empowered commissioners' court to expend all county money necessary, and conferred all power relating thereto not inhibited by Const. art. 11, § 7, providing that no debt shall

be incurred in a county, unless provision is made for levying a sufficient tax to pay interest thereon and provide a sinking fund.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215.]

2. INJUNCTION ⟐⟿130—COUNTY COMMISSIONERS' COURT—PROTECTION OF LIVE STOCK—CONSIDERATION OF STATUTE.

The county commissioners' court could not be enjoined from exercising power given them by Acts 35th Leg. c. 60, relating to prevention of diseases in live stock in force at time of application for injunction, merely because Acts 33d Leg. c. 169, in force when order of commissioners' court was made, did not authorize their action; since the court could consider both statutes in passing upon question.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 288–300.]

3. ANIMALS ⟐⟿29 — PREVENTION OF CONTAGIOUS DISEASES—APPLICATION OF STATUTE.

Acts 35th Leg. c. 60, relating to prevention of diseases in live stock, was intended to apply to counties where Acts 33d Leg. c. 169, had been adopted.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 79.]

4. ANIMALS ⟐⟿29 — CONTAGIOUS DISEASES — VALIDITY OF STATUTE.

The Legislature had power to make the provisions of Acts 35th Leg. c. 60, relating to prevention of disease in live stock, apply where those of the repealed Acts 33d Leg. formerly applied.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 79.]

5. ANIMALS ⟐⟿29—CONSTITUTIONAL LAW ⟐⟿ 293—PREVENTION OF CONTAGIOUS DISEASES —VALIDITY OF STATUTE—INVASION OF PROPERTY RIGHTS.

Acts 35th Leg. c. 60, and Acts 33d Leg. c. 169, requiring all cattle to be dipped, whether infected with ticks or not, and whether kept on owner's premises or not, did not violate Const. art. 1, § 19, or Const. U. S. art. 14, § 1, prohibiting an unwarranted invasion of private property rights; and Const. art. 16, § 23, expressly authorizes Legislature to pass laws for the regulation of live stock and protection of stock raisers.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 79; Constitutional Law, Cent. Dig. §§ 812–814.]

6. COUNTIES ⟐⟿150(1) — EXPENDITURE OF MONEY—PROTECTION OF LIVE STOCK—CONSTITUTIONALITY OF STATUTE — "DEBT" — "ORDINARY EXPENSE."

Acts 35th Leg. c. 60, and Acts 33d Leg. c. 169, requiring expenditures of county money for building of vats and dipping of cattle to prevent disease, does not violate Const. art. 11, § 7, providing that no "debt" shall be incurred by any county, unless provision is made at the time for collecting sufficient taxes to pay interest thereon and to provide a sinking fund; the word "debt" meaning any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the corporation, and such expense being an "ordinary expense," as thus distinguished from a debt; and it was immaterial that expenditure would, in connection with other county debts, result in creating indebtedness which current revenues would be insufficient to pay, since there was sufficient money on hand to pay the necessary expense, and commissioners' court not being required to give precedence to one contemplated "ordinary expense" over another.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215.

For other definitions, see Words and Phrases, First and Second Series, Debt; Ordinary Expenses.]

7. COUNTIES ⟐⟿150(3) — EXPENDITURE OF MONEY — ORDINARY EXPENSE — CONSTITUTIONAL LIMITATION—"DEBT."

If the sum of claims, representing ordinary county expenses, amounted to as much as it reasonably could be expected the current revenues would amount to, ordinary expenses thereafter incurred would be within the prohibition of Const. art. 11, § 7, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1432, 1433, 1436–1438,. requiring claims to be classified, registered, numbered, and to be paid in the order registered.

[Ed. Note.—For other cases, see Counties,. Cent. Dig. §§ 165, 166, 217.]

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Application for injunction by J. M. Brazeale and others against W. H. Strength,. County Judge, and others. Plaintiffs appeal from order refusing temporary injunction. Affirmed.

The appeal is from an order entered April 18, 1917, refusing to grant appellants, who were owners of cattle and other property in Harrison county subject to taxation, a temporary injunction restraining appellees. who constituted the commissioners' court of that county, from "carrying out" an order made by said court February 16, 1917, as follows:

"It is ordered that an appropriation sufficient to build necessary number of dipping vats to carry on the work of systematic tick eradication be and the same is hereby made, and that a sufficient number of men be employed to build said vats by the 1st day of May, 1917. and that on and after the 1st day of May, 1917, systematic and compulsory dipping of cattle be carried on under the direction of the Live Stock Sanitary Commission until the eradication of Texas fever tick in Harrison county."

Appellants alleged that:

Appellees "are threatening and if not restrained will carry out said order and will incur indebtedness against the said Harrison county in the sum of approximately $10,000, which amount will be necessary to carry out said order, and are threatening to and if not restrained will force plaintiffs to dip their cattle against plaintiffs' consent. That in order to carry out said order it will be necessary to incur the following expenses during the months of April, May, June, July, August, September, and October of the year 1917, to wit, cost of labor and materials necessary to construct and charge the dipping vats $5,000, and salaries of 10 men to enforce compulsory dipping $5,000; and the defendants if not restrained will incur said expenses during said months."

As grounds for the relief they sought, appellants alleged that the order was void because:

"(1) An attempt to incur a debt against Harrison county, and the defendants at the time said order was made did not have the funds on hand with which to pay same, and no provision was made for levying a tax to pay the whole or any part of said indebtedness, * * * and any expense which they may incur in carrying out

said order will be creating a debt within the meaning of section 7 of article 11 of the Constitution of Texas.

"(2) There is no provision of law authorizing the defendant to expend the funds of the county for the purposes set forth in said order, * * * and their acts in attempting to incur indebtedness against the county for said purposes are beyond the power conferred upon them by law.

"(3) An attempt on the part of said commissioners' court to dip plaintiffs' cattle in a certain poisonous fluid by completely immersing said cattle therein. That said fluid is frequently swallowed by cattle being dipped and frequently causes the death of such cattle. That said order requires all cattle in Harrison county to be dipped, regardless of where said cattle are located and regardless of whether or not said cattle are taken off of the owner's private premises or allowed to mingle or come in contact with other cattle, and said order is in conflict with section 19 of article 1 of the Constitution of Texas, and with section 1 of article 14 of the Constitution of the United States, in that it is an unwarranted invasion of private property rights and deprives plaintiffs of their property without due process of law."

C. M. Abney and H. T. Lyttleton, both of Marshall, for appellants. Bibb & Bibb and T. W. Davidson, all of Marshall, for appellees.

WILLSON, C. J. (after stating the facts as above). Nothing to the contrary appearing in the record, we are inclined to think this court should assume that the vats were built before May 1, 1917, as directed in the order of the commissioners' court, and thereupon paid for; that the dipping of cattle was then commenced and thereafterwards carried on, as was further directed in the order; and that the cattle in Harrison county, including those belonging to appellants, have all been dipped, and the expense thereof paid by the county. If such assumptions should be indulged, then the appeal should be dismissed on the ground that (the alleged threatened unlawful acts having been consummated) to now grant an injunction as prayed for would be a useless act. 1 High on Injunctions, § 23. We will not pursue that course, however, but, being of the opinion it does not sufficiently appear from the record that the court erred when he refused to grant appellants the temporary relief they sought, will affirm the judgment. In doing so, the conclusion reached with reference to the contentions appellants made will be briefly stated.

[1] The first of these contentions is that the commissioners' court had no lawful right to use funds of the county for the purpose of building and charging vats and dipping cattle. It seems to be conceded that the "tick eradication law" approved April 8, 1913 (General Laws, p. 353) was in force in Harrison county at the time the order of the commissioners' court in question was entered. And it is conceded that by the terms of the act approved March 17, 1917 (General Laws, p. 107), which superseded said Act April 8, 1913, and which was in force at the time the judgment appealed from was rendered, the

commissioners' court was authorized to use the county's funds for such purposes. The contention is that the act 1913 alone can be looked to, and that it does not confer such power on said court. We are inclined to think that the provision in the act 1913, which made it the duty of the commissioners' court "to co-operate with and assist the Live Stock Sanitary Commission in protecting the live stock of their respective counties from all contagious, infectious or communicable diseases, whether such exists within or outside of the county, and in other ways protecting the live stock interest of their counties," operated to confer upon the commissioners' court power not inhibited by section 7 of article 11 of the Constitution, to incur, and pay with the county's funds, such expense as was necessary to make effective assistance it was required to render to the Live Stock Sanitary Commission.

[2] But we do not agree that the court below could not also look to the act 1917 for such power in the commissioners' court. That act was in force at the time the application for the temporary writ was acted upon; and, if such power then existed in the commissioners' court, the fact that it did not exist in them at the time they made the order of February 16, 1917, would not be a reason for granting the writ. The trial court should not have enjoined the commissioners' court from exercising power they then possessed, because they did not possess it at the time they entered the order providing for the vats.

[3, 4] Declaring that "all elections held prior to the taking effect of this act whereby any county in this state has by a majority vote, voted to eradicate ticks, is hereby in all things declared to be a valid election and is in all things ratified," the act of 1917 by its express terms repealed the act 1913. That the Legislature intended the provisions of the act 1917 to apply in counties where the tick eradication law of 1913 had been adopted cannot be doubted. That it had power to make the provisions of the later act apply where those of the repealed act formerly applied we think follows from the decision of the Supreme Court in Ex parte Dupree, 101 Tex. 150, 105 S. W. 493.

[5] It is further insisted, however, that both the act 1913 and the act 1917 are violative of section 19 of article 1 of the state Constitution and section 1 of article 14 of the federal Constitution, in that they were "an unwarranted invasion of private property rights," because they required all cattle to be dipped, whether infected with ticks or not, and whether kept on the owner's premises or not. We think the acts were not violative of the provision in the state Constitution specified. Section 23 of article 16 of that Constitution authorized the Legislature to "pass laws for the regulation of live stock and the protection of stock raisers." Armstrong v. Traylor, 87 Tex. 598, 30 S. W. 440. The acts in ques-

tion were passed for that purpose, and to accomplish it we think it was within the power of the Legislature to require all cattle to be dipped without respect to whether they were infected with ticks or not, or whether they were kept by the owner on his premises or not. Smith v. State, 74 Tex. Cr. R. 232, 168 S. W. 522; Graves v. Rudd, 26 Tex. Civ. App. 554, 65 S. W. 63; Roberson v. State, 42 Tex. Cr. R. 595, 63 S. W. 884; McGee v. State (decided by Court of Criminal Appeals April 25, 1917); Bishop v. State, 122 Tenn. 729, 127 S. W. 698. Nor do we think the acts in question violative of section 1 of article 14 of the federal Constitution. Cooley's Constitutional Limitations, 502 et seq., and 830 et seq.

[6] The other contention made by appellants is that it appeared that building the vats and dipping the cattle would be violative of that part of section 7 of article 11 of the Constitution which declares that:

"No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as the sinking fund."

It was shown that the commissioners' court regarded the expense to be incurred in building vats and dipping cattle as an ordinary one, and contemplated paying same out of the county's third class fund. It is insisted that it appeared that that fund was wholly insufficient to pay such expense and other ordinary expenses of the county, and that the use of any part of it to pay for building the vats and dipping cattle inevitably would result in creating indebtedness which could not be paid out of the current revenues of the county. If it followed that the expense authorized to be incurred by the order providing for building vats, etc., when incurred, would create a "debt" against the county within the meaning of the provision of the Constitution set out above, as distinguished from an "ordinary expense" of the county, the contention should be sustained, for it appears that the only provision made for paying it was that made for paying ordinary expenses of the county. We think the expense was an ordinary one, and do not understand appellants to be in the attitude of denying it was. Their contention is, as we understand it, that the commissioners' court did not have a right to incur the expense because to do so would increase the total of the ordinary expenses of the county for the year 1917 to a sum the current revenues for that year would be insufficient to pay. The Supreme Court has defined the word "debt," as used in the provision in the Constitution in question, as meaning:

"Any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control

of the corporation." McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322.

While the testimony showed that the current revenues of Harrison county for 1917 would be insufficient to pay ordinary expenses already incurred and which it was contemplated would be incurred by the county during the year, it further showed that the county, at the time the order in question was entered and at the time the judgment appealed from was rendered, had in hand funds sufficient to pay the expense of building the vats and dipping cattle and all ordinary expenses theretofore incurred by the county.

So the question which confronted the trial court was, it seems, whether it was beyond the power of the commissioners' court to incur the expense contemplated by its order, because to do so, if other contemplated ordinary expenses of the county were incurred during the year, would result in creating indebtedness against the county which its current revenues were not sufficient to pay. If building the vats and dipping cattle was an ordinary expense of the county which it could pay out of "some fund then within its immediate control," as we have seen was the case, we do not think the commissioners' court was without power to incur it for the reason stated. We have not found and have not been referred to anything in the law which required the commissioners' court to give to one contemplated ordinary expense precedence over another where the current funds of the county were not sufficient to pay both.

[7] There are provisions of the statute, however, which, it seems to us, point out a way to determine when the commissioners' court has reached the limit of its power under the Constitution to create indebtedness against the county on account of its "ordinary expenses." Article 1433, Vernon's Statutes, provides for a classification of all claims against the county. Article 1438 provides for a classification of the funds belonging to the county. Article 1432 provides for the registration by the county treasurer of all claims against the county. Article 1436 requires the claims to be numbered in the order presented. Article 1437 requires the claims to be paid in the order they are registered. Where the requirements of the statute have been complied with, it seems to us it easily could be determined at any time whether the sum of claims representing ordinary expenses of the county amounted to as much as it reasonably could be expected the current revenues of the county would amount to. When it was found they did, it seems to us it might very well be said that such ordinary expenses of the county as were thereafterwards incurred were within the prohibition of section 7 of article 11 of the Constitution.

The judgment is affirmed.