tel at Gorman was a house of ill fame or a house of prostitution. The conviction appears to be based upon the idea that the transaction at Gorman, and possibly the same kind of transaction at Cisco, in which the prostitute, with the knowledge and aid of appellant, plied her vocation at a place out in the woods and in a pasture, neither of which were shown to be a house of prostitution, tent, or any kind of attempted inclosure, but simply in the open country sheltered by the darkness, was a violation of the terms of the act touching the entry of a "place" in which prostitution is encouraged.

The use of the word "place" in the first paragraph of the court's charge suggests the idea that such was the view of the trial court. The indictment, it occurs to us, should have been under article 498 of the statute, which makes it a penal offense to procure a female for the purpose of having sexual intercourse with any male; the words being as follows:

"It shall be unlawful for any person to invite, solicit, procure, allure or use any means for the purpose of alluring or procuring any female to visit and be at any particular house, room or place for the purpose of meeting and having unlawful sexual intercourse with any male person."

There is no evidence of fraud, duress, or abuse of position of confidence or authority. At all events, we do not think the evidence supports the necessary element of the prosecution charging appellant's acts to have been in connection with bringing or keeping of the female named in a "house of prostitution." There is evidence that he went with her to a house of a man in Cisco with whom neither of them were acquainted; her mission being, as we understand it, to get work in connection with a restaurant or work of some kind. She stayed at the house mentioned for a day or two, and subsequently returned there on her own accord, and on one of the occasions she had intercourse with the owner of the house, so far as evident, without any arrangement or knowledge on the part of appellant. She also says that she had sexual intercourse with a man in the hotel at which she stopped, but this was when she had gone there without appellant accompanying her.

[3] That the evidence raised an issue as to either of these houses being a house of prostitution is doubtful. If, however, it did raise such issue, or the evidence does upon another trial, the special charges requested by appellant or similar special charges defining a house of prostitution should be given.

It has been held that, where the evidence is undisputed that a certain house is a house of prostitution and the issue in the case is not the character of the house but the acts of the accused with reference to it, no instruction defining a house of prostitution is necessary. Clark v. State, 76 Tex. Cr. R. 348, 174 S. W. 354. In this case, however, there is no exclusive proof that either of the houses mentioned were houses of prostitution or where prostitution was encouraged or allowed within the meaning of the law, under which circumstances the charges mentioned were necessary. Hewitt v. State, 71 Tex. Cr. R. 243, 158 S. W. 1120.

The judgment of the lower court is reversed, and the cause remanded.

―――――――

MULKEY v. STATE.　(No. 4675.)

(Court of Criminal Appeals of Texas.　Feb. 6, 1918.)

1. ANIMALS ⬤⟹29—STOCK LAWS—AUTHORITY OF LEGISLATURE.

Under Const. art. 16, § 23, declaring that the Legislature may pass laws for the regulation of live stock, and the protection of stock raisers in any part of the state, and may exempt from the operation of such laws other sections or counties, and shall have power to pass general and special laws for the inspection of cattle, etc., provided that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, the Legislature can pass laws for the regulation of live stock affecting any given locality, and making it effective with or without submitting it to a vote.

2. CONSTITUTIONAL LAW ⬤⟹62—DELEGATION OF LEGISLATIVE AUTHORITY—WHAT CONSTITUTES.

Rev. St. 1911, art. 7312 et seq., creating the live stock sanitary commission, authorizing the commission to establish, maintain, and enforce such quarantine line and sanitary rules as may be necessary, to make and promulgate rules and regulations which shall permit and govern inspection and shipment of cattle from quarantine districts, and declaring that it shall be unlawful to move or allow any cattle or other live stock to be moved from any quarantine district in any manner, method, or condition other than as prescribed by the commission, and that notice shall be given by proclamation of the Governor, and Acts 33d Leg. c. 169, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 7314b), forbidding the removal of live stock from a quarantine district without compliance with the rules and regulations of the commission, as proclaimed by the Governor, are not invalid as a delegation of legislative power to an administrative body.

3. CRIMINAL LAW ⬤⟹304(17)—JUDICIAL NOTICE—PROCLAMATION.

Under the Tick Eradication and Quarantine Law (Acts 33d Leg. c. 169 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 7314–7314e]), the court and jury will take judicial notice of the rules and regulations of the live stock sanitary commission proclaimed by the Governor, but judicial notice cannot be taken of rules and regulations not so proclaimed.

4. CRIMINAL LAW ⬤⟹304(17)—JUDICIAL NOTICE—PROCLAMATION OF GOVERNOR.

As the Governor has no authority to make rules and regulations for the protection of live stock, proof of a violation of a proclamation by the Governor defining a special quarantine area and forbidding the movement of cattle into or from such area, without inspection, etc., will not support a conviction of a violation of the rules and regulations of the live stock sanitary commission proclaimed by the Governor; for, as the proclamation of the Governor did not show that the rules and regulations were adopted by the commission, the court cannot take judicial notice that such rules and regulations were prescribed by the commission.

―――――――――――――――――――――――――――――――

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Concho County Court; James E. Howzer, Judge.

Abe Mulkey was convicted of violating the quarantine order, by the live stock sanitary commission for the eradication of ticks, and he appeals. Reversed and remanded.

L. J. Wardlaw, of Sonora, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Appellant was convicted of violating a quarantine order by the live sanitary commission for the eradication of ticks.

The complaint and information are very complete. They allege a proper election in said county on September 18, 1915, ordered by the commissioners' court upon the petition of the necessary qualified voters for the eradication of ticks; that the election was carried and so declared by the commissioners' court; an order by that court duly made and duly published; that the county judge of said county properly notified the live stock sanitary commission of the result of said election, and that said commission caused to be issued a supplemental proclamation by the Governor proclaiming a quarantine around said county; that tick eradication was properly begun under said proclamation on February 14th; that said commission promulgated and the Governor proclaimed the rules and regulations known as order III, and effective February 15, 1917, for the certification, treatment, and handling of live stock into, within, or from a special quarantined area of which said county was a part, said order being as follows:

"It shall be unlawful for any cattle * * * to be moved into, within, or from said area until they have been inspected and certified to by an inspector of the live stock sanitary commission or the United States Bureau of Animal Industry. Inspectors shall not issue certificates on such live stock moved within or from said area unless they have been dipped—one dipping if free of ticks and two or more dippings with an interval of at least 7 days where they are infected with ticks"

—and that on February 27th appellant did unlawfully move, and cause same to be done, from a point in said Concho county into certain premises in Runnels county which was a part of said area, certain cattle without first having them inspected and certified to by an inspector of said commission or United States Bureau of Animal Industry, showing them to be free from infection, and that said cattle had not been dipped according to said order; the said tick eradication law and said rules and regulations of said live stock santitary commission being in full force and effect in said county.

[1, 2] Appellant contends, in substance, that the information charges no offense because it charges the violation of an order prescribed by the live stock sanitary commission, and not an act of the Legislature, and that the Legislature cannot delegate the lawmaking power to said commission in violation of section 1, art. 3, of the Constitution.

Article 16, § 23, of the Constitution expressly authorizes the Legislature to pass laws for the regulation of live stock and the protection of stock raisers in any part of the state, and that it may exempt from the operation of said laws other portions, sections, or counties. That section also provides for submitting any such law to a vote of the people to be affected thereby. Under this provision of the Constitution both the civil courts and this court have held that the Legislature can pass any such law affecting any given locality in the state and make it effective with or without submitting it to a vote. Armstrong v. Traylor, 87 Tex. 598, 30 S. W. 440; Graves v. Rudd, 26 Tex. Civ. App. 554, 65 S. W. 64; Brazeale v. Strength (Tex. Civ. App.) 196 S. W. 249; McGee v. State, 194 S. W. 953; Ex parte Thompkins, 47 Tex. Cr. R. 359, 83 S. W. 379; Roberson v. State, 42 Tex. Cr. R. 597, 63 S. W. 884; and other cases.

The law of this state (article 7312 et seq., R. S.) created our live stock sanitary commission and prescribes its duties and powers. Under that law the said commission was— "authorized and empowered to establish, maintain and enforce such quarantine lines and sanitary rules as it may be necessary, * * * quarantine any district, county or part of county, within this state when it shall determine the fact that cattle or other live stock in such district, county or part of county, are affected * * * to make and promulgate rules and regulations which shall permit and govern the inspection, * * * treatment, handling and method and manner of delivery and shipment of cattle and other live stock from a quarantined district, county or part of county into any other district * * * shall give notice of such rules and regulation by proclamation issued by the Governor." Vernon's Sayles' Ann. Civ. St. 1914, art. 7314.

And article 7314a further provides:

"It shall be unlawful to move or allow to move any cattle or other live stock from any quarantined district, county, part of county or premises, to any other district, county part of county or premises, in manner, method or condition other than those prescribed by the live stock sanitary commission and proclaimed by the Governor."

And article 7314b further provides:

"No live stock shall be moved to or from such special quarantined district, pastures or premises in a manner, method or condition other than those prescribed by the live stock sanitary commission." Section 3, Acts 1913, p. 354.

Section 2 of Acts 1913, p. 354 (section 7314a) is:

"That cattle or other live stock may be moved from a quarantined district, county, or part of county, or from quarantined premises into any other district, county, part of county, or premises, under and in compliance with the rules and regulations of the live stock sanitary commission, as proclaimed by the Governor, but it shall be unlawful to move or allow to move any cattle or live stock from any quarantined district, county, part of county or premises, to any other district, county, part of county or premises, in manner, method or conditions other than those prescribed by the live

stock sanitary commission and proclaimed by the Governor."

In St. Louis S. W. R. R. Co. v. Smith, 20 Tex. Civ. App. 451, 49 S. W. 632, it was said by our Ft. Worth Court of Civil Appeals that, where our live stock sanitary commission has declared quarantine lines as to animals so as to prevent communication of disease therefrom, and has prescribed rules and regulations to make such quarantine effective, and the Governor has properly proclaimed them, "such lines and such regulations have all the force of law, and, as such, should be obeyed by every class of our citizenship," and it was held in that case that, where said commission had quarantined against cattle from Louisiana being shipped into this state, and it had been properly proclaimed by the Governor, that Smith, the plaintiff therein, could not recover from the railroad the value of the cattle shipped by him in violation of that quarantine and proclamation. That case was affirmed by the United States Supreme Court, 181 U. S. 248, 21 Sup. Ct. 603, 45 L. Ed. 847.

In Smith v. State, 74 Tex. Cr. R. 232, 168 S. W. 522, where appellant was convicted for driving his cattle across the quarantine line in violation of the line so established by our said commission, it was held that such establishment and regulation by the commission was not the exercise of a delegation of the power to legislate; that such authority therefor was contained in the law enacted by the Legislature to that effect, citing several decisions.

In 3 C. J. (Corpus Juris) p. 50, it is said: "The authority of the Legislature to enact laws for the protection of domestic animals, and to prevent the spread of infectious or contagious diseases among them, is everywhere recognized as a valid exercise of the police power of the state. Thus the state may prescribe stock quarantine regulations, and may also require its citizens, at their expense, to disinfect their diseased or infected live stock or infected places."

In section 148, p. 51, it is said: "Under the commerce and police powers both the federal and state governments may pass quarantine laws for the purpose of isolating diseased or suspected cattle, and thus preventing their communicating disease to other cattle with which they may otherwise come in contact. These laws usually confer authority to establish and maintain such quarantine as may be necessary upon the state board of agriculture or live stock commission. In the exercise of the authority thus conferred, such board or commission may make all reasonable and necessary rules and regulations for the enforcement of the law."

In section 147, p. 51, it is said: "It is within the power of the Legislature to confer upon officers or commissions authority to execute the law and to adopt all needful regulations to that end. Legislation of this character is not a delegation of legislative functions" —citing several authorities.

Again, in section 182, p. 60, it is said that: "In order to render its quarantine legislation effective of the purpose sought to be attained, the state has power to provide punishment for those who violate the law. To this end violation of sanitary and quarantine regulations, as, for instance, driving or transporting diseased cattle from one state to another, is frequently made a misdemeanor or a penal offense."

Under these authorities we think the authority given to our live stock sanitary commission to quarantine live stock and to adopt rules and regulations to enforce the same, when properly promulgated by the Governor, is not the exercise of legislative functions by the commission, and that such rules and regulations so properly promulgated are valid, and the violation thereof may be made an offense. This results in holding that the indictment herein was valid in charging an offense.

The decisions holding the pool law void by the majority of this court and of the Supreme Court and relied upon by appellant are inapplicable herein.

[3, 4] It has been correctly held under said Tick Eradication and Quarantine Law that the court and jury had to take judicial knowledge of the Governor's proclamation proclaiming such quarantine and the rules and regulations adopted by said commission, and that it was not necessary to prove them. McGee v. State, 194 S. W. 953. However, neither this court nor any other court is bound to take judicial notice of any rules and regulations adopted by the said Commission which have not been proclaimed by the Governor. In fact such rules and regulations, even though adopted by the commission, are without force and effect unless and until the Governor proclaims them by his proclamation.

In this case doubtless the state and the court below relied upon the proclamation of the Governor described in the information. We have examined that orginal proclamation in the office of the secretary of state. It in no way proclaims any rule or regulation which had been adopted by said commission. It simply states that certain counties (naming them), including Concho and Runnels, are hereby declared to be under special quarantine known as the special quarantined area, and in another paragraph that it shall be unlawful for any cattle, etc., to be moved into, within, or from said area until they have been inspected and certified by an inspector of the live stock sanitary commission or the United States Bureau of Animal Industry. In another paragraph that inspectors shall not issue certificates on any of such live stock moved within or from said area unless they have been dipped—one dipping if the stock are free from ticks, and two or more dippings with an interval of at least seven days when they are infected with ticks. This proclamation does not proclaim nor purport to proclaim that any or either of said rules and regulations have been adopted by said commission nor are they proclaimed as such, but on the face of the proclamation the Governor himself, without any regard to the commis-

sion or any action by it, states therein what we have shown. The Governor of himself has no power nor authority to adopt any rules and regulations on the subject. The commission must do this. His duty is to proclaim, not what he has done, but what the commission has done, in order to put the rules and regulations of the commission in force.

Under this state of the case the trial judge charged the jury, in effect, that said rules and regulations of said commission were in force and effect in Concho and Runnels counties, making it unlawful for any cattle to be moved into, within, or from Concho to Runnels county until they had been inspected and certified by an inspector of the said commission or the United States Bureau of Animal, Industry. The whole charge of the court was based on the idea that it could and did take judicial knowledge of said proclamation by the Governor, and that it proclaimed that the said claimed rules and regulations had been adopted by said commission. This was all properly excepted to at the time by the appellant, and presents reversible error.

If the live stock sanitary commission had itself adopted the said rules and regulations, and the Governor by said proclamation had proclaimed that the said commission had done so in his proclamation, then an altogether different question would have been presented.

For the error in the court's charge the judgment is reversed, and the cause remanded.