Ex Parte W. B. Ash.

No. 8360.   Delivered February 18, 1925.

**1.—Habeas Corpus—Stock Laws—Voting on—Subsequent Statutes—Not Invoked.**

Where the voters of a certain precinct of Comanche County, in September 1903, determined at an election *held* for that purpose that cattle, horses, etc., should not be allowed to run at large in such precinct, there being at that time no penal statute fixing a punishment for a violation of the law, so adopted, a subsequent legislative enactment of a penal statute, would have no operation in such precinct where the election was *held* prior to the adoption of such penal statute. Following Dowson v. State, 25 Tex. Crim. App. 670 and other cases cited.

**2.—Same—Scope of Inquiry—Limited to Validity of Law.**

In an original habeas corpus proceeding, complaint of inaccuracies of description in the metes and bounds of the territory voted in, and alleged discrepancies of description between the territory described in the order of the commissioners court, granting the petition and calling the election, will not be considered. See Ex. Parte Thulemeyer, 119 S. W. 1146, and other cases cited.

**3.—Same—Rule—Statutes Cannot Have Retroactive Effect.**

Where the people in any given territory vote upon themselves a law not theretofore in operation in such territory, the punitive provisions of such laws in effect at the time they are voted on, cannot be made more severe by legislative enactment, .and be held operative in such territory, until the citizens thereof themselves, shall adopt by their own vote, such law with its more onerous provisions. Relator can not be prosecuted under the penal provisions which were not in the law, at the time it was adopted in said precinct. The writ heretofore granted will be perpetuated, and the relator will be discharged. Following Ex Parte Jank 245 S. W. 685 and other cases cited.

An original application for habeas corpus by which relator seeks relief from the custody of the sheriff of Comanche County, who holds him under a corpus, following the indictment for a violation of the stock law, in said county.

*Jerome P. Kearby,* of Comanche, for appellant.

*Ghent Sanderson,* County Attorney, of Comanche, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—This is an original application for *habeas corpus* by which relator seeks relief from the custody of the sheriff of Comanche county, who holds him under a capias following the indictment of relator for a violation of the stock law ·in said county.

The issues are made by an agreed statement of the facts on file. From same we learn that in September, 1903 an election was held in what purported to be justice precinct No. 6 of said county to determine whether cattle, horses, etc., should be allowed to run at large, at which election it was determined that they should not. The charge against relator is a violation of the law thus adopted. An examination of our stock law statutes presents a rather curious situation. The first laws passed on the subject after the Constitution of 1876, was adopted, gave to the people of given territories the right of decide whether hogs, sheep and goats should be prohibited from running at large and no law otherwise providing,, seems to have been passed until 1899. However, the Legislature in 1897, passed the penal statute, which is now Art. 1241 of our Penal Code, making it a misdemeanor to allow stock to run at large, which had been

99 Tex. Crim.—18.

forbidden so to do under laws then in force. Prior to that time the only penalties had been damages, fees for impounding, etc. Manifestly, then, Art. 1241 penalized parties who allowed hogs, goats and sheep to run at large. In 1899 the Legislature passed a law allowing certain named counties to vote on the question as to whether cattle, horses, etc., should run at large. No mention was made in this statute of hogs, sheep and goats. By amendment at various times this statute has been added to—an amendment in 1903 (Chapter 71, Acts Regular Session 28th Leg.,) adding, among others, the county of Comanche to those which had the right to vote upon themselves the provisions of said law. That same year in September the election in the territory here under consideration was held and the law was adopted. No penal features appeared in any of the various enactments relative to horses, cattle, etc., until the 30th Legislature in 1907, in Chapter 57, Acts of its Regular Session, further amended said statute relating to cattle, horses, etc., and provided a punishment for a violation of its provisions in the shape of a fine. These matters are referred to in Neuvar v. State, 72 Texas Crim. Rep., 410, wherein appears the following statement:

"In the present Revised Statutes and Penal Code it seems reasonably certain that the Legislature intended that Article 1241, Penal Code, should apply more particularly, if not exclusively, to hogs, sheep and goats, and that Article 1249 should apply to horses, cattle, etc. The said two articles of the Penal Code are taken, in the revision, from the general bills of the several Acts on the subject."

It is admitted in the case before us that there has been no other or subsequent election held in said precinct. It is also admitted that relator's cow ran at large in a part of said precinct not in the territory about which appears in this record a dispute as to whether it is included; in other words, the animal ran at large in a part of the precinct admittedly covered by the description of same in the petition and order for the election.

Relator has no valid ground of complaint here because of the inaccuracies of description in the metes and bounds of the territory voted upon. Matters of this character can not be reached by *habeas corpus.* Ex Parte Thulemeyer, 119 S. W. Rep., 1146. Nor do we agree with relator's contention based on alleged discrepancies of description between the territory described in the order made by the commissioners court granting said petition and calling the election. Ex Parte Stein, 135 S. W. Rep., 136; Williams v. State, 107 S. W. Rep., 124; Stewart v. State, 153 S. W. Rep., 1133; Neuvar v. State, 72 Texas Crim. Rep., 410.

Relator contends that he is not criminally liable herein because there was no penal provision in the law when it was adopted by local

option vote in 1903 of his precinct, and he insists that the principle announced in Dawson v. State, 25 Texas Crim. App., 670, and adhered to in other decisions down to and including Lewis v. State, 58 Texas Crim. Rep., 351, is applicable to his case. We approved the doctrine there announced in the comparatively recent case of Ex Parte Jank, 245 S. W. Rep., 685, and if it has application to the facts we see no reason to change our views. The State cites Robertson v. State, 42 Texas Crim. Rep., 595; Black v. State, 136 S. W. Rep., 478; Vitch v. State, 127 S. W. Rep., 1040; Slack v. State, 136 S. W. Rep., 1071, and Dozier v. State, 137 S. W. Rep., 680. Each of these cases has been examined. What is deemed the question decisive of this case was not the point involved in any of them.

We are constrained to believe that when, under the permissive clauses of our Constitution and under legislative sanction, the body of the people in any given territory are called on to decide whether they will vote upon themselves the mandates and provisions of laws not theretofore in operation in such territory—and they do so vote them into such operation, that the punitive provisions of such laws then in force can not be made more severe by legislative enactment and be held operative in such territory unless and until the citizenship thereof themselves adopt by their own vote such law with its more onerous provisions, or else the laws under which the exercise of the law-making power by the people in said territory, be repealed. We think this doctrine applicable in this case. The stock laws relative to horses, cattle, etc., as they were upon our statute books in 1903 when this local option election was held in the precinct under consideration, did not contain any provisions punishing those who violated the terms of the law. Neither relator nor those in his precinct have ever agreed by their vote to submit themselves to a law having such penal provisions in it. Of course, they might have voted such law into effect, but the question is that they did not. Since they did not, we are constrained to follow the path so well outlined by our predecessors and to hold that relator not be prosecuted under the penal provisions which were not in the law at the time it was adopted in said precinct.

The writ heretofore granted will be perpetuated, and the relator will be discharged.

*Writ perpetuated and relator discharged.*