DAVIS et al. v. WATERTOWN NAT. BANK et al. (No. 7349.)

(Court of Civil Appeals of Texas. Dallas. June 12, 1915. Rehearing Denied July 3, 1915.)

1. APPEAL AND ERROR ⚙⇒671 — RECORD — BRIEFS — STATEMENTS OF FACT—RULES OF COURT.

Under rules 40 and 41 for the Courts of Civil Appeals (142 S. W. xiv), providing that, when the rules for the submission of a case have been fully complied with by the appellant, the court may regard the brief as a proper presentation of the case, without an examination of the record, and may found its decision thereon, unless the appellee shall file copies of his brief containing objections to the grounds of error as presented by appellant, etc., and that whatever statement of the appellant in his brief is not contested will be considered as acquiesced in, where the record contained no statement of facts and no evidence, nor any briefs on behalf of appellees, the court could decide the case on the issues presented by appellants' brief, assuming the appellees' acquiescence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2867–2872; Dec. Dig. ⚙⇒671.]

2. RAILROADS ⚙⇒150 — INDEBTEDNESS — APPROVAL OF RAILROAD COMMISSION—STATUTE —CONSTITUTIONALITY.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, invalidates every evidence of debt operating as a lien upon the property of a railroad company, when unaccompanied by a certificate of the secretary of state showing the approval of the railroad commission of such indebtedness. Const. art. 12, § 6, declares that no corporation shall issue stocks or bonds except for money paid, labor done, or property actually received. In a suit on notes executed by a railroad and negotiated without the certificate of approval required by the act, the plaintiffs contended that the statute was unconstitutional. *Held*, that the act was in harmony with the constitutional provision and a supplement to it, rendering it effective, for, while the provision directs that corporations shall not do the prohibited things, it contains no regulations or formalities relating to the issuance of stocks and bonds, which effect notice and protect the prospective stockholder or creditor if the corporation has not observed the constitutional injunction, a matter that the act provides for in the case of railroad corporations.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ⚙⇒150.]

3. RAILROADS ⚙⇒152 — INDEBTEDNESS — APPROVAL OF RAILROAD COMMISSION — INVALIDITY OF OBLIGATION—NOTICE—STATUTE.

Whoever purchases the bond of a railroad company not properly certified by the secretary of state to the effect that the railroad commission has approved its issuance, as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, has constructive notice of the invalidity of the obligation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 465, 466; Dec. Dig. ⚙⇒152.]

4. RAILROADS ⚙⇒148—UNAPPROVED INDEBTEDNESS—NOTE—LIABILITY OF ACCOMMODATION MAKERS—STATUTE.

Where notes issued by a railroad company were invalid because the railroad commission had not approved the indebtedness, as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, indorsers were not liable thereon as accommodation makers, since their liability was no greater than that of the road, while as to the latter the notes were void ab initio by the statute.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 460; Dec. Dig. ⚙⇒148.]

5. CONSTITUTIONAL LAW ⚙⇒297—DUE PROCESS—APPROVAL OF RAILROAD OBLIGATION BY COMMISSION—STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, invalidates every evidence of debt operating as a lien upon the property of a railroad company, when unaccompanied by the certificate of the secretary of state showing the approval of the railroad commission

of such indebtedness. Const. art. 1, § 19, provides that no citizen of the state shall be deprived of life, liberty, property, privileges, or immunities, except by due course of the law of the land. *Held* that, since the Legislature has all legislative power not forbidden it by the state Constitution, and since the statute operated on all alike, was impartial, did not subject the individual citizen to any arbitrary exercise of the powers of government, and affected the remedy rather than the right, it did not deny due process of law to the payee of a railroad's note, unapproved by the railroad commission.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 832–834; Dec. Dig. ☞ 297.]

6. RAILROADS ☞148—INDEBTEDNESS — STATUTE REQUIRING APPROVAL OF RAILROAD COMMISSION—OPTIONAL CHARACTER.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulates the issuance of stocks and bonds by railroads. Article 6719 provides that the railroad commission shall make a report to the secretary of state of the value of the franchises, appurtenances, and property of each road in the state, which shall be a limitation on the incurrence of indebtedness by railroads under the rules prescribed by the succeeding provisions of the act. Article 6722 provides that should any road desire to issue bonds or other indebtedness, to be secured by lien or other mortgage on its franchises and property, in advance of the completion of the road, it shall first secure the consent of the railroad commission. Article 6727 provides that failure to comply with preceding articles shall wholly invalidate any indebtedness incurred by a road. *Held*, that the act was not of an optional character, requiring the railroad commission to first assume control of a railroad, as a condition precedent to the invalidity of a note of such road unapproved by the commission, since the statute placed the regulation and approval of railroad indebtedness exclusively within the control of the commission, with definitely prescribed duties, while any option on the part of the commission was excluded by the article requiring it to value the property of each road in the state, and report the same for the precise purpose of regulating and controlling indebtedness.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 460; Dec. Dig. ☞148.]

7. RAILROADS ☞179—DEMURRER — CONTROL OF FACT PLEADED.

Where, in an action against a railroad company on notes not approved by the railroad commission, as required by Vernon's Sayles' Ann. Civ. Ct. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, a supplemental plea averred that the road was local and suburban, expressly excepted from the control of the railroad commission by article 6731, the issue of fact so raised could not be controlled by demurrer.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec. Dig. ☞179.]

8. RAILROADS ☞179 — INDEBTEDNESS — APPROVAL OF COMMISSION—STATUTE—EXCEPTION OF SUBURBAN LINE — BURDEN OF PROOF.

In an action against a railroad on notes claimed to be invalid because not approved by the railroad commission, as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, the burden of proof is on the plaintiff to show that the railroad commission decided that the road was local and suburban, and so possibly exempt from the operation of the act by article 6731, since the commission has an option to decide whether to assume control over

such a railroad after it has decided it is suburban in character.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec. Dig. ☞179.]

9. RAILROADS ☞148 — SERIES OF NOTES — WAIVER OF DEFENSES AS TO ONE—EFFECT.

Where a railroad issued a series of notes invalid for noncompliance with Vernon's Sayles' Ann. Civ. St. 1914, arts. 6717–6732, regulating the issuance of stocks and bonds by railroads, and such road and its directors waived their defenses on one note as to the holder, in consideration that it extend the time of payment, such waiver did not waive the defense of the statute as to the other notes in the hands of other holders.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 460; Dec. Dig. ☞148.]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by the Watertown National Bank against Glen Rose & Walnut Springs Railway Company and others, in which Sara Ida Davis and others were joined as plaintiffs. Judgment for defendants, and plaintiff Davis and others appeal. Reversed and remanded.

N. J. Wade, of Ft. Worth, for appellants.

RASBURY, J. [1] The record in this cause contains no statement of facts, in fact appellants state that no evidence, other than an agreement between certain of the parties which will be hereafter referred to, was introduced. Nor does the record contain briefs on behalf of appellees. Accordingly, we will found our decision of the case upon the issues presented in appellants' brief and assume appellees' acquiescence in all statements contained therein, as we are authorized to do by rules 40 and 41 prescribed for the guidance of this court by the Supreme Court (142 S. W. xiv).

From appellants' brief it appears that the pleadings in the court below disclosed the following facts: Appellee Glen Rose & Walnut Springs Railway Company issued a series of four notes, each for $2,500. Three of the notes were acquired by appellants, Sara Ida Davis, Woodford M. Davis, and Dr. Francis M. Johnson, and one was acquired by appellee Watertown National Bank. Payment of the four notes was secured by trust deed and trust agreement, without preference to either note, upon the right of way and other property of the railway company. The notes were all indorsed by J. H. Farr and W. D. Morton. When issued the notes did not in fact represent a present consideration, but were negotiated with appellants and appellee Watertown National Bank before maturity, and for valuable consideration. The notes were in the usual form of negotiable promissory notes and recited that their payment was secured by pledge of all the personal and real property described in the trust deed and should be invalid unless a certificate attached to the notes was signed by the Guaranty State Bank & Trust Company, trustee. The certificate was so signed. The notes were not paid at

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

maturity. Thereupon appellee Watertown National Bank sued on the note acquired by it, asking appropriate relief against the Glen Rose & Walnut Springs Railway Company, as maker, and Farr and Morton, as indorsers, and joining appellants therein on the ground that they were the owners of the remaining three notes and entitled to participate in the proceeds of the sale of the security. Others were made formal parties to the suit, but it it not necessary to detail them, nor the disposition made of them by the final judgment. Appellants adopted the pleadings of the Watertown National Bank, and declared, as well, independently upon their notes against the maker and asked also for appropriate relief against the indorsers. Appellees Glen Rose & Walnut Springs Railway Company and Farr and Morton, among other pleadings, demurred to appellants' plea for affirmative relief on the notes, upon the ground that it appeared that the notes were secured by lien on the property of a proposed railroad, the issuance of which was not shown to have been approved by the state railroad commission failing in which they were, by law, void. In avoidance of the plea so urged appellants, by supplemental plea, averred that the Glen Rose & Walnut Springs Railway Company was a suburban short line of about 10 miles and, by law, exempted from the control and regulation of the railroad commission. The same defenses that were urged against appellants' notes were also urged by appellees Glen Rose & Walnut Springs Railway Company and Farr and Morton to the note and lien of the appellee Watertown National Bank, but were subsequently withdrawn, as will immediately appear. At trial the district judge sustained the demurrer to appellants' cause of action and dismissed same. Judgment was rendered for appellee Watertown National Bank against appellees Glen Rose & Walnut Springs Railway Company and Farr and Morton, for the amount due on its note, together with foreclosure of lien upon the securities named in the deed of trust. This judgment was based upon an agreement between said appellees that the defenses on the one side would be withdrawn in consideration that the parties on the other side would extend the time of payment.

[2-4] The first assignment of error is that the court erred in sustaining appellees' special exception to appellants' petition, because those provisions of the statute (chapter 16, arts. 6717–6732, vol. 4, Vernon's Sayles' Stats. 1914, popularly known as the stock and bond law), which invalidate every evidence of debt operating as a lien upon the property of railroad companies when unaccompanied by the certificate of the secretary of state showing the approval of the railroad commission of such indebtedness, are unconstitutional, because in conflict with section 19 of the Bill of Rights, declaring that no person shall be deprived of his property without due course of law, and are unconstitutional for the further reason that they are in conflict with article 12, section 6, of the state Constitution, declaring that "no corporation shall issue stocks or bonds except for money paid, labor done, or property actually received," etc. Discussing the issues in inverse order, we fail to see any conflict between that portion of the Constitution just quoted and the provisions of chapter 16 of the statutes. It was said in O'Bear-Nester Glass Co. v. Antiexplo Company et al., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931:

That the purpose of the constitutional convention in enacting section 6 of article 12 "was to secure creditors, as well as stockholders, of corporations against the practice, which was too common, of corporations issuing fictitious stock and stock upon an insufficient consideration, whereby the actual capital was much less than the amount represented by the shares issued and sold by the corporation. The terms in which this section of the Constitution is expressed indicate the purpose that the assets of the corporation should be something substantial and of such a character that they could be subjected to the payment of claims against the corporation as well as to secure the shareholders in their rights in the capital stock."

The word "bonds," it will be observed, appears in the provision in the same relation as does "stocks," discussed in the foregoing case by the Supreme Court. Consequently the purpose of the section as construed by the Supreme Court as applied to stocks is necessarily the same as applied to bonds, that is, that they be not fictitious, but represent something substantial, i. e. "money paid, labor done, or property actually received." Such being the purpose of the constitutional provision, it occurs to us that the provisions of chapter 16 are not only not in contravention thereof, but in entire harmony therewith, and are an almost necessary supplement to the constitutional provision in order to make it effective. While the constitutional provision directs that corporations, which include railroad corporations, shall not do the things therein prohibited, it contains no regulations or formalities relating to the issuance of stocks and bonds which will put upon notice and protect the prospective stockholder or creditor in case the corporation has not in fact observed the constitutional injunction. That is precisely what the provisions of chapter 16 do when they direct that stocks and bonds (notes) of railroad corporations not approved by the railroad commission and certified to in that respect by the secretary of state upon the bond shall be void. And whoever purchases the bond of a railroad company not properly certified has constructive notice of its invalidity. The effect of the rule is not dissimilar to the statutory rule with reference to one who purchases a negotiable note after maturity, or of one who purchases before maturity with actual notice. Accordingly no railroad corporation being permitted to issue bonds without observing the provisions of chapter 16, and the bonds acquired by appellants showing upon their face to be the bonds of a railroad com-

pany without such certificate, such fact was notice to appellants that they were void, even though acquired before maturity. In connection with what we have just said it is urged by appellants that even though the notes sued on were void and unenforceable as to the Glen Rose & Walnut Springs Railway Company, yet appellees Farr and Morton would be liable thereon as accommodation makers. We conclude not. Their liability was no greater than that of the makers, and is determined by the same rule. Being void ab initio, a subsequent indorsement could not impart vitality to them.

[5] On the issue that the stock and bond law is invalid because in contravention of the guaranty in section 19 of the Bill of Rights that appellants shall not be deprived of their life, liberty, property, etc., except by the due course of the law of the land, appellants do not specify in what particular that guaranty has been denied them. It does not appear to have been denied them at trial, since no complaint is made that the formalities of notice and a hearing were denied by the trial court. Hence we take it that the claim must relate to the enactment of the law itself. Our Legislature, except where restrained by the Constitution of the United States, may exercise all legislative power not forbidden, expressly or by implication, by the provisions of our state Constitution. The enactment of the stock and bond law comes obviously within none of the limitations noted, and since it operates upon all alike, is impartial, and does not subject the individual citizen to arbitrary exercise of the powers of government, and affects the remedy rather than the right, the law in our opinion does not deny appellant the due process of law. March v. State, 44 Tex. 64; Armstrong v. Traylor et al., 87 Tex. 598, 30 S. W. 440; Nash Hardware Co. v. Morris, 105 Tex. 217, 146 S. W. 874.

[6] By the third assignment of error it is urged that the court erred in sustaining the exception noted, for the reason that no evidence was offered by appellees showing that the commission had assumed control of the Glen Rose & Walnut Springs Railway Company, and in such connection it is asserted as a proposition that such control is optional with the commission. We think it quite clear that the railroad commission is without option in such matters, save in the respect hereinafter mentioned. Article 6719, Vernon's Sayles' Stats., which is a part of the act creating the railroad commission, makes it the duty of the commission to ascertain the value of the franchises, appurtenances, and property of each railroad in this state and make written report thereof to the secretary of state, the report of the commission to remain in the office of the secretary of state as a public record, and as a limitation upon the issuance of indebtedness by the railroads of the state under the rules prescribed by succeeding provisions of the act.

By article 6685, it is provided, among other matters, that the railroad commission is authorized and empowered "to approve liens or mortgages that may be given by such railroad companies and common carriers," etc. Article 6722 provides that should any such company "desire to issue bonds or other indebtedness, to be secured by lien or other mortgage on its franchises and property, in advance of the completion of the said railroad, it shall make application to and first procure the consent of the railroad commission thereto." Article 6727 provides that failure to comply with the preceding articles shall wholly invalidate any such indebtedness, etc. It thus appears that the matter in controversy in this suit is placed squarely and exclusively within the control of the railroad commission, with its duties definitely prescribed, and no presumption exists that the commission will exercise any option in the discharge of the powers and duties so conferred, particularly when such option is excluded by the article requiring it to value the property of the roads and report same to the secretary for the precise purpose of regulating and controlling the indebtedness thereof. Rather the presumption arises that they will carefully and consistently preserve all powers expressly or by implication conferred, among which are those enumerated in the articles cited.

[7, 8] At this point, and in connection with what has just been said, we will consider the fourth assignment of error, which complains of the action of the trial judge in sustaining the special exception noted on the ground that appellants alleged in avoidance of said exception that the Glen Rose & Walnut Springs Railway Company was a proposed suburban railway about 10 miles in length, and one expressly excepted by law from the control of the railroad commission. This assignment should be sustained. Article 6731 of the act under discussion, in effect, permits the railroad commission to exclude from the operation of the several provisions of the act already quoted local suburban railways constructed for any distance less than 10 miles from the corporate limits of any city or town, etc., and, when so excluded, said article 6731 provides that such suburban railway company shall have the right to issue its bonds, etc., free from the control of the railroad commission and without complying with the other provisions of the act, and when so issued such bonds, etc., shall be valid. This is the exception referred to in the paragraph of this opinion next above. Appellants, by their pleading as stated, averred that the Glen Rose & Walnut Springs Railway Company was such a suburban road as contemplated by the article quoted, and hence exempt from the control of the commission. The pleading standing as indicated, a question of fact was raised that could not be controlled by the demurrer. We do not, however, construe article 6731 to mean, as

contended by appellants, that the railroad commission was without control whatever of the character of road indicated. Rather we construe it to mean that it may decide it will not assume control of such railroad after it has decided that such railroad is of the character claimed, and that, as a consequence, the litigant claiming the exemption would have the duty of showing, not that it was a suburban railway, but that the railroad commission had so decided. Denison & S. Ry. Co. v. Railroad Commission, 95 Tex. 671, 69 S. W. 62.

[9] It is also urged by the fifth and eighth assignments that the effect of the agreement between the appellees, Glen Rose & Walnut Springs Railway Company, Farr and Morton, and Watertown National Bank, by which the former waived their defenses to the note and confessed judgment therein in consideration of the latter granting an extension of time for payment, was to in like manner waive such defenses to the notes sued upon by appellants. Such, in our opinion, was not the effect of the agreement. Legal remedies or defenses available to litigants are matters that may or may not be asserted, and a failure to exercise such remedy or defense in a given case or an agreement to waive it for reasons sufficient to the one to be affected, would not, clearly, prevent the assertion of such right against another, even in the same transaction.

All other assignments not specifically discussed have been considered carefully, and, because we are of opinion that they show no reversible error, same are overruled.

For the reason indicated the judgment of the court below is reversed, and the cause remanded for another trial not inconsistent with the views expressed herein.

Reversed and remanded.