## STATE v. HUMBLE OIL & REFINING CO.
### (No. 6782.)

(Court of Civil Appeals of Texas. Austin.
April 9, 1924. Rehearing Denied
May 21, 1924.)

**1. Monopolies ⬅️26(1)—Different punishment for offending domestic and foreign corporations not indicated by difference in terms "shall violate" and "violating."**

That, as enacted by Anti-Trust Law of 1903, Rev. St. art. 7800, provides that any domestic corporation which "shall violate" act shall thereby forfeit its charter and franchise, while article 7803 provides every foreign corporation "violating" it is prohibited from doing business in state, and Attorney General shall enforce this provision by injunction, does not indicate difference in punishment whereby foreign corporation shall not be enjoined if it has ceased to violate act.

**2. Monopolies ⬅️26(1)—Anti-trust law not a self-executing statutory injunction against offending foreign corporation.**

Rev. St. art. 7803, as enacted by Anti-Trust Law of 1903, providing that every foreign corporation violating the act is hereby denied the right and prohibited from doing any business in the state, and the Attorney General shall enforce this provision by injunction or other proper proceedings in court, is not a self-executing statutory injunction.

**3. Constitutional law ⬅️296(1)—Construed as self-executing injunction, anti-trust law would violate due process clause.**

Rev. St. art. 7803, as enacted by Anti-Trust Law of 1903, if construed as a self-executing injunction against doing business in the state by a foreign corporation which had violated the anti-trust law, would violate the spirit, if not the letter, of Fourteenth Amendment of the federal Constitution relative to due process of law.

**4. Constitutional law ⬅️48—To be construed not to violate Constitution.**

Statute should be construed, if possible, not to violate Constitution.

**5. Constitutional law ⬅️251—"Due process of law" defined.**

By the law of the land, or "due process of law," as used in Fourteenth Amendment of the federal Constitution, is meant the general law, which hears before it condemns, proceeds on inquiry, and only renders judgment after trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**6. Monopolies ⬅️10 — Anti-trust statute amended "so as to hereafter read as follows" repealed.**

Acts 1923, c. 5, § 1, amending Rev. St. art. 7803 (as enacted by Anti-Trust Law of 1903) "so as hereafter to read as follows," being evidently intended as a substitute for, repeals the former statute to the extent of its provisions.

**7. Monopolies ⬅️10—Penalty or forfeiture under anti-trust law released by repeal without saving clause before judgment.**

Repeal, without saving clause, by Acts 1923, c. 5, § 1, of Rev. St. art. 7803 (as enacted by Anti-Trust Law of 1903), before necessary suit to enforce the penalty of exclusion from doing business in the state, against a foreign corporation which had been adjudged guilty of, and fined for, violating the law, released the penalty of forfeiture of right to do business in the state.

**8. Corporations ⬅️642(1)—Foreign corporation owning majority of stock of domestic corporation held not doing business in state.**

A foreign corporation, though holding the majority of the stock of a domestic corporation, is not, through it, doing business in the state, it making no effort to control or manage the domestic company.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by the State of Texas against the Humble Oil & Refining Company. Judgment for the defendant, and the State appeals. Affirmed.

W. A. Keeling, Atty. Gen., and John C. Wall and Frank M. Kemp, Asst. Attys. Gen., for the State.

Edgar E. Townes, General Counsel, John C. Townes, Jr., General Atty., Carlton & Meredith, Hines H. Baker, and Andrews, Streetman, Logue & Mobley, all of Houston, for appellee.

BLAIR, J. The state of Texas, through its Attorney General, instituted this suit on August 28, 1923, in the district court of Travis county, against Humble Oil & Refining Company, a private corporation, organized under the laws of Texas, to perpetually enjoin and restrain it from doing business in Texas, to forfeit its charter and franchise rights, and to recover the statutory penalties for violation of the provisions of chapter 1, title 130, Revised Statutes, relating to the anti-trust laws of Texas, alleging that on July 20, 1913, in a suit in the district court of Hunt county, Tex., entitled State of Texas v. Magnolia Petroleum Company et al., the Standard Oil Company of New Jersey, a foreign corporation, organized under the laws of the state of New Jersey, and a party to the above suit in Hunt county, was found guilty of violating the anti-trust laws of Texas on divers and sundry dates between March 13, 1889, and October 26, 1909, and a penalty of $500,000 was assessed; that by reason of said judgment convicting the Standard Oil Company of New Jersey of violating the anti-trust laws of Texas it was from and after the date thereof prohibited by the provisions of article 7803, R. S., from doing any business in the state of Texas; that the Standard Oil Company of New Jersey did

not thereafter comply with the provisions of article 7805, R. S. relating to the manner in which a foreign corporation convicted of violation of the anti-trust laws of Texas might be again permitted to incorporate or do business in Texas; that in December, 1919, subsequent to the entry of the above judgment convicting the Standard Oil Company of New Jersey of violation of the anti-trust laws of Texas, it acquired more than 50 per cent. of the capital stock of appellee, Humble Oil & Refining Company, a Texas corporation; and thereafter, before the filing of this suit, more than 60 per cent. of appellee's corporate stock had been transferred to the Standard Oil Company of New Jersey, and the money representing the purchase price thereof had been transferred into the treasury of appellee, Humble Oil & Refining Company, which was alleged to be in effect a transfer of the property and business of an ousted corporation to a domestic corporation in Texas, as the successor of the defaulting or ousted corporation; that by reason of the ownership of more than 60 per cent. of the stock of appellee, Humble Oil & Refining Company, the said Standard Oil Company of New Jersey exercised full and complete control and management of appellee by attending, participating and voting in stockholders' meetings, and by the election of officers and directors, through which the policies of appellee were as fully and fairly managed and controlled as if it were transacting business in Texas in its own name; and that by reason of such control and management appellee has become the means or agency whereby the Standard Oil Company of New Jersey is doing business in Texas in violation of the anti-trust laws.

Appellee answered by general demurrer, general denial, that the opinions of the Supreme Court of Texas and of the Supreme Court of the United States established a rule of property on the question involved in this suit, in that they had repeatedly held that the ownership of stock in a Texas corporation by a foreign corporation was not "doing business" within the state of Texas by such foreign corporation, and that such ownership was not a violation of the state laws, which decisions appellee alleges it relied upon in good faith, and upon advice of counsel and its belief that said decisions constituted a rule of property in making the sales of stock in question; and that such sales of stock and the rights resulting therefrom would be protected by said rule of property and the Constitution and laws of the United States and of the state of Texas; and that any change of this rule of property as applied to any sale and purchase of appellee's stock in the instant case would be in violation of section 10 of article 1 of the Constitution of the United States, and would also be in violation of section 16, article 1, of the Constitution of the state of Texas; that the anti-trust laws were in violation of the Fourteenth Amendment to the United States Constitution, and in violation of section 21, article 1, of the Constitution of Texas; that the judgment of the district court of Hunt county convicting the Standard Oil Company of violation of the anti-trust laws of Texas did not forfeit its right to do business in Texas, but to the contrary the proceedings and judgment in the case are and constitute res adjudicata in this proceeding, for said judgment adjudged it guilty of violation of the anti-trust laws of Texas, and assessed as punishment a fine or penalty of $500,000, and various items of costs, and decreed no ouster, forfeiture, or injunction against said corporation doing business in Texas, but denied all such relief, and dissolved all injunctions issued in the case, and that the said fine, penalty, and costs of such case had been paid by said Standard Oil Company.

Upon the trial of the cause before the court, without a jury, judgment was entered for appellee on both the law and the facts. The state of Texas has duly perfected her appeal from this judgment.

The state of Texas relied upon the judgment of the district court of Hunt county on July 20, 1913, convicting the Standard Oil Company, a foreign corporation, of violation of the anti-trust laws of Texas, and the fact that said foreign corporation thereafter became the owner by purchase of more than 60 per cent of the capital stock of appellee, Humble Oil & Refining Company, a domestic corporation, which stock the foreign corporation voted in all meetings of the domestic corporation by proxies to establish its case that an ousted foreign corporation was doing business in Texas, in violation of articles 7803 and 7805, R. S.

It is therefore clear that the state of Texas based its case upon two grounds, each dependent upon the other to establish the cause of action alleged, and each dependent upon the other to establish its contention on this appeal. The first contention of the state of Texas is that the Standard Oil Company of New Jersey, a foreign corporation, having been convicted of violation of the anti-trust laws of Texas, was thereafter, under the provisions of article 7803, R. S., perpetually enjoined from doing any business in Texas, without regard to the character of judgment rendered by the court in which the conviction was had, or whether such judgment of conviction took into consideration the question of thereafter enjoining the convicted corporation from doing business in Texas.

The Standard Oil Company of New Jersey was not made a party to this suit, but appellee, Humble Oil & Refining Company, a Texas corporation, was named defendant; hence of necessity the state must establish that the domestic corporation was in fact the alter ego, or the means or agency through

and by which the convicted foreign corporation was doing business in Texas.

Therefore the state's second contention is that, because the Standard Oil Company of New Jersey, a foreign corporation (theretofore convicted of violating the anti-trust laws of Texas, by reason of which it is contended that it became by statute thereafter perpetually enjoined from doing any business in Texas, without regard to whether the judgment of conviction so enjoined it from doing business in Texas), subsequently purchased more than 60 per cent. of the capital stock of appellee, Humble Oil & Refining Company, a Texas corporation, the purchase price therefor being transferred to appellee's treasury, thereby resulting in appellee becoming the corporation "to which the defaulting corporation may have transferred its properties and business, or which has assumed the payment of its obligations," as prohibited by the provisions of article 7805, R. S., and that by reason of the ownership of 60 per cent. of appellee's corporate stock, and that by reason of said control over said stock by executing proxies to vote it at all meetings of the stockholders and in the election of officers and directors of said domestic corporation, it thereby became in fact the means or agency through and by which the said foreign corporation was doing business in Texas.

That portion of the judgment of the district court of Hunt county, Tex., applicable to this case, omitting formal parts, is as follows:

"First. That the Standard Oil Company of New Jersey, a corporation under the laws of New Jersey, is guilty of violating the anti-trust laws of the state of Texas for a period of time prior to the 26th day of October, A. D. 1909, and that by reason thereof the plaintiff, the state of Texas, do have and recover of and from the said Standard Oil Company of New Jersey penalties in the sum of $500,-000, and all costs of suit; and in addition thereto the plaintiff shall also recover all expense incurred by the Attorney General and under his direction incident and pertaining to the bringing and prosecution of this suit, which amounts to the sum of $1,397.27, the said amounts so awarded to the state being for violations of the anti-trust laws of the state of Texas found under the agreement filed herein on divers and sundry dates prior to the 26th day of October, A. D. 1909; that this said judgment for said amount and sums of money shall be in full satisfaction of any and all demands of the state of Texas for violation of the anti-trust laws by said defendant at any and all times prior to the 26th day of October, A. D. 1909. Upon said agreement it is further ordered, considered, and adjudged by the court that the defendant, Standard Oil Company of New Jersey, is not guilty of the charges of violating the anti-trust laws of the state of Texas at any time since the 26th day of October, 1909, and as to any and all charges contained in said petition of any such violations after said date that the said defendant, the

263 S.W.—21

Standard Oil Company of New Jersey, go hence without day, and that the state take nothing by its suit."

"Fourth. It is further considered, ordered, adjudged, and decreed that, excepting the judgment herein rendered in favor of the state of Texas against the Standard Oil Company of New Jersey, the state of Texas recover nothing by its suit, and that each and every one of the other defendants herein go hence without day."

"Seventh. It is further ordered that all injunctions heretofore granted in this cause be and the same are hereby dissolved."

In passing upon the state's first contention, we deem it necessary to a clearer understanding of it to briefly review the history of anti-trust legislation in Texas, as well as legislation in regard to the method by which foreign corporations may be admitted to do business in Texas.

In 1887 a law (Laws 1887, c. 128) was passed with reference to admission of foreign corporations to do business in Texas, but it was declared unconstitutional in the case of Mortgage Co. v. Worsham, 76 Tex. 556, 13 S. W. 384, because it prohibited foreign corporations from removing suits from the state to the federal courts. This same act which provided that a foreign corporation failing to obtain a permit to do business in Texas could not maintain any suit or action, etc., in any court of Texas, was again re-enacted in 1889 (Acts 1889, c. 78), omitting the objectionable features of the act of 1887.

At the same session of the Legislature in 1889 the first general anti-trust laws were passed (Acts 1889, c. 117), which undertook to define trust, and the portions thereof pertinent to this case are as follows:

Article 7800, R. S., provided:

That "any corporation holding a charter under the laws of the state of Texas, which shall violate any of the provisions of this act shall thereby forfeit its charter and franchise, and its corporate existence shall cease and determine."

Article 7803 provided:

"Every foreign corporation violating any of the provisions of this act is hereby denied the right, and is prohibited from doing any business within this state, and it shall be the duty of the Attorney-General to enforce this provision by injunction or other [proper] proceedings in the district court of Travis county, in the name of the state of Texas."

It might be here noted that some distinction was made by these statutes between a domestic and a foreign corporation violating the anti-trust laws. Article 7800 provided that each domestic corporation which "shall violate" said law shall "forfeit its charter and franchise, and its corporate existence shall cease and determine," while article 7803 provided that every foreign corporation "violating" said law (using the word violating in the present tense) is denied the right

and prohibited from doing business within this state, and further imposes the duty upon the Attorney General by injunction or other proper proceedings in the district court of Travis county to enforce "this provision."

The above act of 1889 was superseded by the act of 1895 (Acts 1895, c. 83), in every respect; however, this later act re-enacted the indentical language of the article under consideration in this case. The evident purpose of the 1895 act was to incorporate insurance-companies within its terms, since the Supreme Court had held the act of 1889 not to include insurance business within its terms. Ins. Co. v. State, 86· Tex. 250, 24 S. W. 397, 22 L. R. A. 483. The distinction between the statute above set forth for domestic and foreign corporations violating the law was maintained by this act as in the former act.

The next legislation was in 1899 (Acts 1899, c. 146). This act undertook to prohibit pools, monopolies, etc., and eliminate the use of the terms used in the 1889 and 1895 acts which provided that a foreign corporation "violating any provisions of this act" shall be prohibited from doing business in Texas; but provided that any corporation "which shall violate any of the provisions," etc., shall thereby forfeit its right and privilege "thereafter" to do business in Texas. A similar act to this one was declared unconstitutional by the Supreme Court of the United States in the case of Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, because of the exemption by the act of agricultural products and live stock in the hands of the producer or raiser from its terms. This decision was in 1902.

In 1903 the Legislature enacted a comprehensive anti-trust law (Acts 1903, c. 94) covering the whole subject, removing the objections of the former legislation relative to agricultural products, etc., prescribing practically the same penalties, but expressly repealing eo nomine all legislation theretofore passed upon the subject of trusts, and expressly repealing the provisions of the act of 1899. This act of 1903 substantially, word for word, re-enacted articles 7800 and 7803 of the Acts of 1889, 1895, thus again making some distinction between a foreign and a domestic corporation violating the act. It was under the provisions of this act that the Standard Oil Company was convicted in the district court of Hunt county, in 1913, and the agreed judgment hereinbefore set out rendered.

The next legislation on the anti-trust subject was passed by the Thirty-Eighth Legislature in 1923 (chapter 5), which act amended articles 7800, 7803 of the act of 1903. If the Attorney General's contention that the conviction of the Standard Oil Company under the provisions of the act of 1903 thereby perpetually enjoined it from doing business in Texas be correct, then such procedure constituted a final judgment under the provisions of the law then in force, and its repeal by a later legislative act would have no effect upon such final judgment. We therefore pretermit a discussion of the act of 1923 until the first contention is answered.

[1] In passing the act of 1903 the Legislature had before it all previous anti-trust laws, for it repealed them all and re-enacted the language used in some of the former laws, and rejected and expressly refused to follow the language of others. It made the same distinction relative to a foreign corporation "violating" and a domestic corporation "which shall violate" this act as was made by both the act of 1889 and the act of 1895. It rejected the provisions of the act of 1899 relative to "any corporation violating" the act, whether the corporation be domestic or foreign.

Appellee insists that this distinction is significant, in that it clearly shows an intention on the part of the Legislature to make a distinction in the punishment of a foreign and a domestic corporation violating the anti-trust laws, and, further, that by reason of this distinction article 7803, supra, merely directed the Attorney General to proceed, not to forfeit a permit, but by injunctive process to deny to a foreign corporation, whether it had a permit or not, the right to do business in Texas while "violating any of the provisions" of the act. We do not agree with this contention. We do not think the Legislature intended to say, by the use of the term "shall violate" in one instance, and the word, "violating" in another, that the state of Texas would be willing for any foreign corporation to do business in Texas, so long as such foreign corporation was not, at that moment or at the time a suit was filed, "violating any of the provisions of this act." Nor do we think that it intended by the use of this language that, when a foreign corporation ceased violation of the anti-trust laws, the objection ceased, and that it would thereafter be unobjectionable for it to resume business in Texas. If such construction be placed upon the language used, then no right would exist on the part of the state to prohibit a foreign corporation from doing business in Texas, which was not shown at the time suit was filed to be violating the laws of Texas, regardless of how flagrantly it had theretofore disobeyed them. In other words, all a foreign corporation charged with violating the anti-trust laws of Texas would have to establish, in a suit instituted for the purpose of enjoining its right to do business in Texas, would be that, although it had theretofore been guilty of such violation, it had ceased to do so at the time the suit was filed; then, if appellee's construction of the distinction of the language used in these articles be correct, it would be the duty of the court to deny the injunction,

since no discretion to do otherwise is given by these articles under such construction. The terms "shall violate" and "violating" seem to have been used interchangeably by the Legislature in passing these statutes, for it is unmistakable from the other language used in these two articles in question the Legislature intended to provide that either a domestic or a foreign corporation would forfeit its right to do business in Texas whether it "shall violate" or be found guilty of "violating" the provisions of the act.

[2, 3] We are of the opinion that article 7803 of said act of 1903 should not and could not be construed to operate as a self-executing statutory injunction, denying a foreign corporation the right to do business in Texas for violating the anti-trust laws, independently of a judgment of a court of competent jurisdiction upon proper hearing decreeing a forfeiture of such foreign corporation's right to do business in Texas.

Before a foreign corporation, convicted of violating the anti-trust laws of Texas, may be denied the right to do business within the state under the provision of article 7803, R. S., it must be enjoined therefrom upon a suit and hearing, by a proper judgment in a court of competent jurisdiction, upon that very issue. Not only do we think that the statute in question does not operate as a statutory injunction without regard to whether or not the judgment of conviction decreed a denial of the right to do business in Texas, but to place such construction upon it would render the statute violative of the spirit, if not the letter, of the Fourteenth Amendment to the Constitution of the United States, which provides that—

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4] It therefore becomes our duty under the law to construe the statute in question, if possible, in such manner so as to not render it violative of the fundamental law. It must be presumed that, when a Legislature passes a law which under one construction of the language used would render it violative of the Constitution, while another construction would not so render it violative of the Constitution, the Legislature intended the latter construction should be placed upon it.

[5] By the law of the land, or "due process of law," as the term is used in the Constitution, is meant the general law, which hears before it condemns, proceeds upon inquiry, and only renders judgment after trial. Armstrong v. Taylor, 87 Tex. 598, 30 S. W. 440. It is not contended by the state in this case that it obtained a judgment evicting and enjoining the Standard Oil Company of New Jersey of the right to do business in Texas by the decree entered in the Hunt county district court in 1913, upon which judgment it relies in this case to establish the fact that said company had violated the anti-trust laws of Texas. It is true that the Standard Oil Company of New Jersey was a party to that suit, and that an agreed judgment was entered, finding it guilty of violations of the anti-trust laws of Texas, but a money judgment or fine of $500,000 and costs was the only punishment assessed by said judgment for said violations. In fact, it decreed that all injunctions and restraining orders theretofore issued in the case be dissolved. It in no way took into consideration the right of the Standard Oil Company to do business in Texas. No hearing or decree was had upon this issue as disclosed by the judgment rendered. No opportunity of having a trial on the issue of enjoining the Standard Oil Company thereafter from doing business in Texas was given or contemplated, since only an agreed judgment was entered. It is therefore clear that, no judgment having been entered upon the direct issue of forfeiture of the right of said foreign corporation to do business in Texas, it follows that the Constitution would not countenance the passage of a statute which would forfeit such right without the opportunity of a hearing and a trial upon such issue directly.

A similar question to this was passed upon by the Supreme Court in the case of Steddum v. Kirby Lbr. Co., 110 Tex. 525, 221 S. W. 920. The procedure applicable to the case at bar is that a divorce was granted a husband upon the ground that his wife was guilty of adultery. The decree entered granted the divorce upon the specific ground of adultery. Under the statute then in force a wife who was found guilty of adultery forfeited her interest in the community property. The court decreeing the divorce did not declare her rights in the community property forfeited, although it decreed the divorce upon the ground of adultery. The children after the death of the divorced wife instituted suit for the recovery of her interest in the community property; hence the question before the Supreme Court, and it disposed of it by the use of the following language:

"Whatever may have been the rule under the laws in force in the Republic at the time of the divorce decree with respect to a wife's adultery operating as a forfeiture of her interest in the community property, we are unwilling to hold that under the Constitution of the Republic such a forfeiture could have resulted from a mere divorce proceeding, or could have been decreed otherwise than in a direct proceeding for the purpose of declaring the forfeiture, with full opportunity on the part of the wife to be heard. A wife against whom such a forfeiture was sought would have been entitled to a trial upon the direct issue. Such a decree without the opportunity of having such a trial

would not have been countenanced by that Constitution."

We think this decision conclusive of the question here raised. The Constitution of the Republic of Texas under which the above proceeding was had was practically identical with section 19 of the Bill of Rights of our present Constitution, and practically the same as the "due process of law" provision of the Fourteenth Amendment to the Constitution of the United States.

[6] Having thus disposed of the statutory injunction question, it necessarily follows that the act of 1923 becomes applicable to this case. Article 7803 of the act of 1903 was amended by the act of 1923, and it was enacted—

"That articles 7800, 7801 and 7803 of title 130, chapter 1 of the Revised Civil Statutes of Texas shall be and are hereby amended so as hereafter to read as follows."

As amended by this act, article 7803 now reads:

"When any foreign corporation is adjudged guilty of violating any of the provisions of this chapter or any anti-trust law of this state, the Attorney General may bring suit in the district court of Travis county for the purpose of enjoining and forever prohibiting such corporation from doing business in this state, and if in the judgment of the court the public interest requires it, the injunction shall be granted, provided the denial of the right to do business in this state to any foreign corporation adjudged guilty of violating the anti-trust laws shall be in addition to all other penalties prescribed by law."

Under the primary rules of construction, of course, this act of 1923 repealed article 7803 as passed by the Legislature in 1903, since the subsequent statute amending the former, "so as hereafter to read as follows" was evidently intended as a substitute for it, and must operate to repeal the former act to the extent of its provisions. Rogers v. Watrous, 8 Tex. 62, 58 Am. Dec. 100; Sutherland on Statutory Construction, § 157. Multiplied authorities might be cited on this proposition.

[7] The 1923 act was in full force and effect at the date of filing this suit, and at the date judgment was rendered. It contained no saving clause seeking to preserve any status, penalty, or forfeiture which had accrued prior to the passage of this 1923 amending act. Another elementary rule of construction is that when an act of the Legislature is repealed without a saving clause, except as to transactions passed and closed, every penalty that accrued prior to the passage of the amending or repealing act is released, pardoned, and forgiven, as if the original act had never existed. This is an elementary rule of construction, and needs no citation of authorities. This being true, article 7803 as amended in 1923 must be construed in the same manner and effect as if it had been in full force and effect on the date judgment was rendered against the Standard Oil Company of New Jersey in the district court of Hunt county in 1913. No construction can be placed upon the article as amended in 1923 as being a self-executing statutory injunction. Its language is clear that before a foreign corporation, adjudged guilty of violating the anti-trust laws of Texas, could be enjoined from doing business within the state the jurisdiction of a court of competent authority must be invoked, with evidence sufficient to sustain its belief that the public interest required such injunction or prohibition in addition to the other penalties prescribed by law. No judgment enjoining the Standard Oil Company of New Jersey from doing business in Texas was had in the suit adjudging it guilty of violation of the anti-trust laws in the district court of Hunt county in 1913, under the provisions of the statutes then in force and effect; and it would necessarily follow that, since the repeal of the act under which the conviction was had without a saving clause, except as to the matters taken into consideration and disposed of by said judgment of conviction, any penalty or forfeiture accruing prior to the passage of the repealing act would be released, pardoned, and forgiven as effectually as if the repealed act had never existed. Sutherland on Statutory Construction, §§ 162, 165, 482; Greer v. State, 22 Tex. 588; Etter v. Railway Co. 2 Willson, Civ. Cas. Ct. App. § 58; State v. T. & N. O. Ry. Co., 58 Tex. Civ. App. 528, 125 S. W. 53; Goodrich v. Wallis (Tex. Civ. App.) 143 S. W. 285; Railway Co. v. Anderson (Tex. Civ. App.) 229 S. W. 998.

[8] We must also sustain the judgment of the trial court that under the facts in this case the Standard Oil Company was not doing business in Texas within the meaning of the anti-trust laws of Texas, and that appellee, Humble Oil & Refining Company, was not the means or agency by and through which said Standard Oil Company of New Jersey was doing business in Texas.

The state relied upon the conviction of the Standard Oil Company of New Jersey in 1913 of violating the anti-trust laws of Texas, and its subsequent purchase of more than 60 per cent. of the capital stock of appellee, Humble Oil & Refining Company, a domestic corporation, and its exercise and control of said stock by executing proxies by which it voted said stock at all meetings of the stockholders thereafter, whether in the election of officers and directors, or otherwise, to establish its case. The facts show that the Humble Oil & Refining Company was incorporated under the laws of Texas in June, 1917, as a private corporation engaged almost entirely in the production of oil. Its business was apparently immediately successful, and daily production in the latter

part of 1918 amounted to thousands of barrels. It owned thousands of acres of leases in the Gulf Coast country, and in the Burkburnett and Ranger districts. Negotiations were begun in 1919 with the Standard Oil Company of New Jersey looking to a sale by appellee of one-half of its capital stock, which was consummated in New York. Appellee, Humble Oil & Refining Company, increased its capital stock of 40,000 shares in 1917, of the par value of $4,000,000, at various times, until December 19, 1922, it consisted of 1,750,000 shares of the par value of $43,750,000, having in the meantime reduced the par value from $100 to $25 per share. At the date of filing this suit and the trial the Standard Oil Company of New Jersey owned 1,063,524 shares of the capital stock of appellee, Humble Oil & Refining Company, or a little more than 60 per cent. of its capital stock. $17,000,000 were paid appellee by the Standard Oil Company of New Jersey for one-half of its stock in December, 1919. The balance of the stock owned by the Standard Oil Company of New Jersey, was purchased by it at various dates in the open market from other owners. It executed proxies to the regular proxy committee of appellee, giving it discretionary power to vote its stock at all meetings of the stockholders as it saw fit. This committee also voted all other proxies of absent stockholders. The officers and directors of the Humble Oil & Refining Company are the same now as of the date of organization, two or three having been added to care for increased and diversified business, all of whom are residents of Texas, except one who is a resident of New York, and was made a secretary for convenience in the sales of stock. These officers are in complete control and management of the business of appellee, Humble Oil & Refining Company. The testimony does not disclose any effort on the part of the Standard Oil Company of New Jersey to exercise, control, or manage appellee.

It seems to be well established by both the Supreme Court of the United States and the Supreme Court of Texas that the ownership of the controlling amount of the capital stock by a foreign corporation is not doing business in Texas by such foreign corporation; that the holding of the majority interest in the stock does not mean the control of the active officers and agents of the local company doing business in Texas. The mere fact that the foreign company had the power to control the domestic company by the election of the directors, who in turn could elect or remove the active officers from the places already held, is not transacting business in Texas by such foreign company. In the case at bar, notwithstanding the Standard Oil Company of New Jersey owned the controlling amount of appellee's stock, still appellee,

Humble Oil & Refining Company, was authorized to do business in Texas in its own name and maintained its separate legal entity, and did continue its business; and we must conclude that under the facts in this case the Standard Oil Company was not doing business within this state in the meaning of the anti-trust laws, and that appellee, Humble Oil & Refining Company,, was not under the facts of this case the alter ego, or the means or agency by and through which the Standard Oil Company of New Jersey was doing business within the state. Railway Co. v. Stevens, 109 Tex. 269, 206 S. W. 921; Peterson v. Railway Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Pullman Co. v. Railway Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; People's Tob. Co. v. American Tob. Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Railway Co. v. Weeks (C. C. A.) 254 Fed. 513; Walker v. Railway Co., 269 Fed. 885, 50 App. D. C. 225; Meischke-Smith v. Wardell (C. C. A.) 286 Fed. 785.

Having thus disposed of the two main questions raised by this appeal, we pretermit a further discussion on the other defenses raised by appellee. The judgment of the trial court is affirmed in all things.

Affirmed.