## HAMOR et ux. v. COMMERCE FARM CREDIT CO. et al.

## No. 4257.

Court of Civil Appeals of Texas. Amarillo.

Sept. 10, 1934.

Rehearing Denied Oct. 15, 1934.

Oxford & Kay, of Plainview, and B. H. Oxford, of Mission, for appellants.

Terrell, Davis, Hall & Clemens, of San Antonio, for appellees.

JACKSON, Justice.

Appellants, C. F. Hamor and wife, Kate Hamor, in 1926 instituted suit in the district court of Hale county against the Commerce Farm Credit Company of Dallas, Tex., and the Commerce Trust Company of Kansas City, Mo., to recover double the amount of unlawful interest they claimed to have paid on a loan obtained by them from the Commerce Farm Credit Company on November 25, 1921. The notes and deeds of trust evidencing the loan and the provisions thereof constituting the contract therefor are fully pleaded.

On application of the Commerce Trust Company the case was removed to the federal court for the Northern district of Texas and the appellee, the Missouri State Life Insurance Company, made a party. On motion of appellants the case was remanded to the district court of Hale county.

The Commerce Trust Company filed no answer, but on October 23, 1933, when the case was reached for trial in the district court of

Hale county, Carl G. Peterson, acting as amicus curiæ, filed an affidavit with the court suggesting there was no service on said company. The court took cognizance of the affidavit, and, after hearing the evidence thereon, dismissed the suit as to said company for want of service, and this action of the court is assigned as error.

The appellants alleged that the "Commerce Trust Company was and still is a banking and money loaning corporation, incorporated under the laws of the State of Missouri, with its principal office in Kansas City, Missouri". That as a scheme to avoid the usury laws of Texas, it organized and incorporated "what is known as the Commerce Farm Credit Company, with its principal office and place of business in Dallas, Dallas County, Texas, in which name the Commerce Trust Company has since such date been operating and doing business in the State of Texas." That the service had upon the Commerce Farm Credit Company "was service upon the Commerce Trust Company of Kansas City, Missouri, for the reason that the Commerce Farm Credit Company is merely the name under which the Commerce Trust Company is operating in the State of Texas." In their petition they asked that citation issue to both "the Commerce Trust Company and the Commerce Farm Credit Company." The citation commanded the officer "to summon Commerce Trust Company and Commerce Farm Credit Company" in a suit wherein appellants are plaintiffs and the "Commerce Trust Company of Kansas City, Missouri, and Commerce Trust Company of Dallas, Texas, and Commerce Farm Credit Company of Dallas, Texas, are defendants." The officer's return shows the citation was executed in Dallas county "by leaving two true copies of the citation, together with the accompanying certified copy of plaintiffs' First Amended Original Petition, at the principal office of the within named defendants, Commerce Trust Company of Dallas, Texas, and Commerce Farm Credit Company of Dallas, Texas."

The charter of the Commerce Trust Company was offered in evidence, and, among other things, states: "That the corporation shall be located in Kansas City in the County of Jackson, State of Missouri."

The charter of the Commerce Farm Credit Company states: "The domicile of this corporation is Dallas, Dallas County, Texas."

It appears from these charters and from the testimony of two witnesses that the Commerce Trust Company and the Commerce Farm Credit Company are two separate and distinct corporations chartered under the laws of different states. That they have different officers, except that Townley Culberson is vice president of the Commerce Farm Credit Company and as such has an office in Dallas, Tex., and vice president of the Commerce Trust Company, and as such officer has an office in Kansas City, Mo. That with two exceptions the corporations have different stockholders, and each has its board of directors who direct, manage, and control the respective business of each company. There is no testimony that the Commerce Trust Company had a permit to do business in this state, or that it was transacting business in this state. The testimony fails to show that said corporation had organized the Commerce Farm Credit Company or was operating in its name or had control thereof by reason of the personnel of the officers, directors, or stockholders of the two companies.

■ It will be noted that the allegations in appellants' petition and the testimony disclose that the Commerce Trust Company was a foreign corporation with its principal office in Kansas City, Mo. There is no contention that service was had on the Commerce Trust Company by serving the "president, vice president, secretary, treasurer, or general manager * * * upon any local or traveling agent, or traveling salesmen of such corporation," as provided in article 2031, R. C. S. The sheriff's return does not show service by leaving a copy "at the principal office of the company during office hours," as required by article 2029, R. C. S. The record is conclusive that the Commerce Trust Company did not have its principal office in Dallas, Tex., and the testimony authorizes a finding that it did not maintain any office in Texas. We are of the opinion that the court correctly dismissed the Commerce Trust Company from the case for want of service. Galveston, H. & S. A. Ry. Co. v. C. H. Gage, 63 Tex. 568; Pecos & Northern Texas R. Co. et al. v. C. B. Cox, 106 Tex. 74, 157 S. W. 745; State v. Humble Oil & Refining Co. (Tex. Civ. App.) 263 S. W. 319; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634.

To the sufficiency of appellants' petition as to the Commerce Farm Credit Company a general demurrer was sustained and said company dismissed from the suit, of which action no complaint is made.

The case was tried on appellants' sixth amended original petition, in which they pleaded in the first count the notes, deeds of trust, and the conditions and provisions there-

of which they alleged constitute an usurious contract, asserted that they had paid usurious interest amounting to $14,430, and sought to recover double that amount as penalty. In the second count in which the facts alleged in the first count were made the basis of their recovery, they sought, if denied recovery on the first count; in the alternative, to have all payments of interest they had made credited on the original note.

The appellee answered by general demurrer, numerous special exceptions, general denial, and pleaded that it had no notice or knowledge of the second deed of trust or the second note or the terms and provisions thereof; that it acquired the first note for a valuable consideration before maturity, and was an innocent purchaser. That one of the material inducements which caused it to purchase the note and lien was the representation in writing by C. F. Hamor that he was contracting with the Commerce Farm Credit Company for a loan of $20,000 at 6 per cent. interest; that such representations were relied upon and induced it to purchase said note, by reason of which the appellants are estopped to deny that such note and the first deed of trust lien are legal and binding upon them in so far as appellee is concerned.

The case was tried before the court without the intervention of a jury and judgment rendered denying appellants any recovery against appellee.

The appellants, on November 25, 1921, obtained a loan of $20,000 from the Commerce Farm Credit Company, payable on December 1, 1931. For said sum they executed their note, which provided for interest at the rate of 6 per cent. per annum from date until maturity in accordance with interest coupons thereto attached, and stipulated that if any installment of interest was not paid when due the principal should become due and collectible at once without notice at the election of the holder, and that all past-due interest should bear interest at the rate of 10 per cent. per annum, payable annually. This note referred to and was secured by a first mortgage lien upon certain real estate fully described therein. The first coupon was for the sum of $1,220, payable December 1, 1922, and each of the remaining coupons was for $1,200, one payable on December 1st of each year thereafter.

On the same day the appellants executed a series of five notes, the first for the sum of $1,210, payable December 1, 1922, and each of the other four was for the sum of $1,200, one payable on December 1st of each year there-after until all of said series were paid and discharged. Each of these notes provided for interest after maturity at the rate of 10 per cent. per annum, payable annually, and was secured by a second deed of trust on the property described in the first deed of trust.

The second deed of trust was to secure the last above-described notes, aggregating the sum of $6,010, and was made "subject to the first deed of trust * * * but executed concurrently therewith and all of the terms, provisions, covenants and agreements, except as may be changed by the terms of this instrument, in said first deed of trust are hereby referred to, adopted and made a part hereof" etc. It also stipulated that "If the notes secured hereby are paid according to their terms, this conveyance shall be void and the lien created thereby shall be released by the holders at the expense of grantors, but if the notes secured thereby and each of them are not paid promptly when due or in case of the breach of any of the covenants, terms or agreements of said first deed of trust, then all of said notes hereby secured shall become due and payable at the election of the holder," etc.

The coupons attached to the $20,000 note, and the five notes secured by the second deed of trust, were all given for interest.

The first deed of trust was filed for record in the office of the county clerk of Hale county, Tex., on December 27, 1921, at 10:35 a. m., and recorded December 29, 1921, at 11 o'clock a. m. The second deed of trust was filed in said office on December 27, 1921, at 10:40 a. m., and recorded on December 30, 1921, at 11:15 a. m.

On April 7, 1922, the Commerce Farm Credit Company sold and assigned to appellee for a valuable consideration the $20,000 note secured by the first deed of trust and guaranteed interest thereon at the rate of 7 per cent. per annum, payable annually. This transfer has never been placed of record. On December 7, 1926, the Commerce Farm Credit Company executed to appellants an instrument acknowledging payment in full of the notes secured by the second deed of trust, and released the lien thereby created.

Each of the five notes secured by the second deed of trust was paid on or about its due date. Each of the first five interest coupons attached to the $20,000 note was paid on its approximate due date, and the sixth and seventh of said coupons were paid some time later. All of the instruments were payable at the office of the Commerce Trust Company in Kansas City, Mo., and all payments were made at that place and appellee's interest paid to it from said office.

The appellee objected to the introduction in evidence of the second deed of trust and the notes secured thereby, and to all the interest payments made, because irrelevant and immaterial to any issue in the case, since said instruments were executed, delivered, and the money collected thereon . without notice or knowledge to appellee.

The court sustained this objection, excluded the testimony, appellants excepted, and present such ruling of the court as reversible error.

■ Appellants in the first count of their petition sought double the amount of the interest they had paid as a penalty, as authorized by article 5073, R. C. S. The $20,000 note, the interest coupons attached thereto, and the first deed of trust, do not show on their face that the loan was usurious, and in order to establish a cause of action under the first count the burden. was on them to plead and prove that appellee had notice or knowledge of the usury in the transaction.

"The provision of the statute which authorizes a recovery of double the amount of usurious interest against the person who receives or collects the same is a penalty. It is an exaction imposed by statute as a punishment for an unlawful act. One who seeks a recovery under this statute has the burden of proving the existence of facts entitling him to the penalty therein provided.

"It was essential, in order for plaintiff in error to recover the statutory penalty for usury against the assignee of the note, that he allege and prove knowledge or notice upon its part and that the interest received and collected was usurious." Fires v. Kinney-Shotts Inv. Co. et al. (Tex. Com. App.) 59 S.W.(2d) 827.

The appellants in the second count of their petition, however, sought in the alternative, if not allowed double the amount of interest paid as a penalty, to have all interest payments they had made credited on the principal of the $20,000 note, as authorized by article 5071, R. C. S.

"An action under the statute for the penalty provided rests upon an entirely different basis from one wherein a defense is urged against the enforcement of a usurious contract or wherein it is sought to cancel the interest imposed by such a contract. * * * When a person seeks to recover on a contract which is usurious, so far as the interest is concerned, he is seeking to enforce a contract which the Constitution declares to be utterly void. Under such circumstances, it is immaterial whether he is a bona fide holder in due course

without notice of the fact that the note provides for usurious interest." Fires v. Kinney-Shotts Inv. Co. et al., supra.

■ The principal note, with its interest coupons and the first deed of trust securing its payment, and the second deed of trust and the series of five notes secured thereby, were all made on the same day, and obviously constituted but one transaction. The second deed of trust was filed for record in the county clerk's office just five minutes after the first deed of trust was filed in said office, and stipulated that it was "executed concurrently" with the first deed of trust. The transaction, as evidenced by all of these instruments construed together, was obviously an usurious contract. Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322; Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S. W.(2d) 11, 84 A. L. R. 1269; Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287; Bothwell v. Farmers' & Merchants' State Bank & Trust Co., 120 Tex. 1, 30 S.W.(2d) 289, 76 A. L. R. 1480.

In Dallas Trust & Savings Bank v. Brashear (Tex. Com. App.) 65 S.W.(2d) 288, 291, the Connecticut General Life Insurance Company, to whom the first note and mortgage had been assigned, defended the charge of usury on the ground that it was an innocent purchaser before maturity, for value and without notice of the usury tainting the contract. In answering this contention, the Commission of Appeals says: "The claim of the Connecticut General Life Insurance Company, that obligation No. 1 was transferred to it before maturity and without notice of the usury tainting the contract and therefore it should recover as an innocent holder, must be disallowed. This precise contention was made in Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031; the court there held that where the statute declares a usurious contract void, it gathers no vitality by its circulation and is void in the hands of an innocent holder."

■ In our opinion the testimony was admissible under the second count of appellants' petition, and its exclusion was error.

The other assignments complaining of the exclusion, on the same objection, of similar testimony, both oral and documentary, are sustained.

Appellee contends that the judgment should be affirmed since as against it appellants were estopped from urging that the loan contract was usurious, because of the representations of C. F. Hamor that he was contracting for a loan of $20,000 bearing interest at the rate

of 6 per cent. per annum from the Commerce Farm Credit Company.

In support of this contention the written application signed by C. F. Hamor to obtain the loan from the Commerce Farm Credit Company was introduced in evidence. The original application is sent up with the record, and contains this language, "The undersigned hereby make(s) application to Commerce Farm Credit Company, of Dallas, Texas, for a loan of $20,000.00 for the term of ten years from Nov. 25th, 1921, option 1923, with interest payable annually on December 1st, the exact terms to be agreed upon and expressed in note or notes to be secured by First Mortgage (Trust Deed) on 960 acres of land," which is fully described in the application. Just above the signature of C. F. Hamor we note this language: "I hereby agree to furnish and pay for a complete abstract of title to the land above offered as security, if the loan applied for is granted, said abstract to show of record *the mortgages to be given in this loan* and such other papers as may, in the judgment of said Company, be necessary to secure the loan or any renewal thereof, said abstract to be deposited with the lender as collateral during the life of the loan." (Italics ours.)

O. T. Wilhelm, the assistant manager of the loan department of appellee, who purchased the loan for his company, testified that he bought the $20,000 note with the 6 per cent. coupons attached, and at the time had before him such note and the coupons, the first deed of trust, the attorney's certificate that it was a first loan, the transfer of the deed of trust, and the application for the loan; that he always required such application, and it was an inducement to him to approve the loan, and that he did not know that there was any other interest provided for except that represented by the interest coupons attached to the $20,000 note.

■ The maker of a note may be estopped by his acts, conduct, or representations from pleading usury in defense of commercial paper held by an assignee who without knowledge, or a convenient and available means of acquiring knowledge, is induced to purchase such obligation by the acts or representations of the maker. The party claiming the benefit of an estoppel must not only be without information relative to the material facts at the time he acts on such representation, but if at the time he acts he "had the means by which,

with reasonable diligence, he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." Pomeroy's Equity Jurisprudence (4th Ed.) 1662, § 810.

"It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." Sheffield Car Co. v. Constantine Hydraulic Co., 171 Mich. 423, 137 N. W. 305, 315, Ann. Cas. 1914B, 994, 995, quoted with approval in Holland v. Blanchard, 262 S. W. 97, 102, by Associate Justice Looney of the Dallas Court of Civil Appeals.

■ It is obvious that the representations appellee claims to have relied on were not made with the intention of inducing it to purchase the obligation in controversy or for the purpose of concealing the true facts. Neither was it, in our opinion, calculated to deceive a person of ordinary prudence. To the extent that appellants sought to have the interest payments applied on the debt, appellee was not an innocent purchaser. The application gave notice that all mortgages given in the loan would be placed of record and shown in the abstract. This provision was complied with, and the second mortgage promptly filed and recorded in the office of the county clerk of Hale county and afforded appellee a convenient and available means for ascertaining the truth, and ordinary prudence would have enabled appellee to have discovered the material facts constituting usury.

Appellants present as error the action of the court in sustaining certain so-called special exceptions which were, in fact, but general demurrers to certain paragraphs of their petition. These assignments are not properly presented for consideration, but what we have said should assist the court, if the questions involved in these assignments are presented on another trial, in passing on such demurrers.

The judgment is reversed, and the cause remanded.